United States District Court
Southern District of Texas
**ENTERED**
November 30, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRINSEO, S.A., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-0478 |
| | § | |
| STEPHEN HARPER, *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## ORDER

Before the Court is Defendant Kellogg Brown & Root, LLC's ("KBR") Motion to Exclude the Opinions of Thomas Pastore. (Doc. No. 125). Plaintiff Trinseo Europe GmbH's ("Trinseo" or "Plaintiff") filed a Response in opposition, KBR filed a reply, and Trinseo filed a sur-reply. (Doc. Nos. 139, 174, 187).

### I.     Prevailing Law

**A.     *Daubert***

This motion to exclude is predicated in part on the standards set out in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), as well as their progeny. *Daubert*'s holdings have been summarized as follows:

> Reliable testimony must be grounded in the methods and procedures of science and signify something beyond "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590, 113 S.Ct. 2786. The inferences or assertions drawn by the expert must be derived by the scientific method. *Id.* In essence, the court must determine whether the expert's work product amounts to "'good science.'" *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (quoting *Daubert*, 509 U.S. at 593, 113 S.Ct. 2786). In *Daubert*, the Supreme Court outlined factors relevant to the reliability prong, including: (1) whether the theory can be and has been tested; (2) whether it has been subjected to peer review; (3) the known or potential rate of error; and (4) whether the theory or methodology employed is generally accepted in the relevant scientific community. *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786. The Supreme

> Court emphasized the "flexible" nature of this inquiry. *Id.* at 594, 113 S.Ct. 2786. As later confirmed in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999): "*Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather the law grants a district court the same broad latitude when it decides how to determine reliability as [the court] enjoys in respect to its ultimate reliability determination." *Id.* at 141–42, 119 S.Ct. 1167.

*Abarca v. Franklin Cty. Water Dist.*, 761 F. Supp. 2d 1007, 1021 (E.D. Cal. 2011).

While *Daubert* attacks usually focus on a witness' reliability, some courts have also included an attack on a witness' qualification (or lack thereof) under the *Daubert* umbrella. KBR's motion primarily attacks the former.

**B.     Rule 26**

KBR makes a second attack on Pastore based upon the disclosures he made and/or failed to make in his initial and supplemental reports disclosed prior to his deposition. KBR claims that the reports, despite their obvious length, do not comply with Rule 26 of the Federal Rules of Civil Procedure.

> Expert reports are covered by Rule 26(a)(2)(a–b):
>
> (A) *In General.* In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
> (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
> > (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> > (ii) the facts or data considered by the witness in forming them;
> > (iii) any exhibits that will be used to summarize or support them;
> > (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> > (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and

>   (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26. Defendants claim Pastore's report falls woefully short of being complete—especially in setting forth "the facts or data considered by the witness in forming the opinions" and "the basis and reasons" for them.

## II.   Rule 26 Contentions

Thus, the Court has before it two different theories about why Pastore's proposed testimony should be excluded. Obviously, Trinseo disagrees. The Court will address the simplest topic first.

Federal Rule 26(a)(2)(B) requires that the disclosure of an expert witness must be accompanied by a written report, prepared and signed by the expert, that includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B). Rule 26(e)(1) and 26(e)(1)(A) provide that "a party who has made a disclosure … must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect[.]" Fed. R. Civ. P. 26(e)(1). Rule 26(e)(2) further states that "for an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." Fed. R. Civ. P. 26(e)(2). "Parties must make these supplemental expert disclosures by the time Rule 26(a)(3) pretrial disclosures are due." *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 371 (5th Cir. 2016).

"Supplemental disclosures are not intended to provide an extension of the deadline by which a party must deliver the lion's share of its expert information." *Id.* Rule 37 provides that "any party who fails to provide the information required by Rule 26 is not allowed to use that

3

information … to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." *Anaya v. Tricam Indus., Inc.*, No. 5:18-CV-01045-OLG, 2021 WL 7448757, at *3 (W.D. Tex. Aug. 30, 2021) (citing Fed. R. Civ. P. 37(c)(1)).

A district court is authorized to "control and expedite" pretrial discovery through a scheduling order pursuant to Rule 16(b). *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990). Accordingly, a trial court may exclude evidence as a means of enforcing a pretrial scheduling order. *Id.* The Fifth Circuit has established a four-factor test to review a district court's discretion to exclude untimely expert testimony: "(1) the explanation for the failure [to produce the report earlier]; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *AIG Eur., Ltd. v. Caterpillar, Inc.*, 831 Fed. App'x 111 (5th Cir. 2020) (citations omitted).

In the instant case, Trinseo produced Pastore's original report in June 2022 and then in October 2022 supplemented it due to the production by KBR of additional discovery. Both of these reports preceded his deposition by weeks. Therefore, the Court finds these two reports to procedurally comply with Rule 26 and Pastore's testimony based upon those two reports will not be excluded, as long as the opinions and the basis for each are in one of these two reports.

If the opinion, the analysis, *and* the basis therefore is not set out in one of those two reports, Pastore will not be allowed to testify on that topic. This ruling applies to any opinion including those opinions raised by the one-page document produced at Pastore's deposition.

### III.   *Daubert* Contentions

Having made its Rule 26 ruling first, the Court will now address the other issues raised by KBR. These are more direct attacks on the various opinions, as opposed to the manner in which they were (or were not) disclosed. In no particular order, these issues include:

4

(1) KBR's allegation that Pastore's opinions about a reasonable royalty rate of $120 million are unreliable.

(2) KBR's claim that Pastore's opinion concerning disgorgement damages of roughly $67 million is likewise unreliable.

(3) KBR's claim that Pastore's testimony is unreliable because he fails to apportion the damages or otherwise consider individual trade secrets.

A.   **Royalty Rate Testimony**

KBR complains that Pastore's opinions concerning royalty rates do not comply with the dictates of the Fifth Circuit in *University Computing v. Lykes-Youngstown Corp.*, 504 F.2d 518, 539 (5th Cir. 1974). In summary, it describes his opinions as "ipse dixit" or, for the Latin impaired, "a bare assertion resting [solely] on the authority of an individual." Black's Law Dictionary (5th ed. 1979). The ruling in *Daubert* and the subsequent rulings interpreting *Daubert*—both by the Supreme Court and by the Fifth Circuit—uniformly instruct that an expert may not opine solely based upon his or her own thoughts and notions. Instead, expert opinions must be based upon admissible facts and data or, if inadmissible, must be based upon facts or data that are reasonably relied upon by experts in the field. Fed. R. Evid. 703. Additionally, an expert must actually be an expert (either by training or experience or hopefully both). Finally, an expert's opinion must be grounded in reality. The Supreme Court in *Daubert* phrased it more eloquently when it said that the opinion cannot be mere subjective belief ("ipse dixit"), it must be grounded in the methods and science upon which he or she purports to opine. *Daubert*, 509 U.S. at 599.

As noted above, it is this last area upon which KBR focuses its challenge. KBR states that Pastore's opinion that $120 million is a reasonable royalty damage is not admissible because it is not based upon the Fifth Circuit's "hypothetical negotiation" analysis found in *University Computing*.

In *University Computing*, the Fifth Circuit addressed the issue of damages arising from a misappropriation in a business context. In some cases when a plaintiff has suffered damage from the misappropriation, courts have "attempted to measure the losses suffered by the Plaintiff." *University Computing*, 504 F.2d at 535. In some circumstances, courts try to measure the value of the secret to the plaintiff. In instances in which the "secret" has not been published, courts at times look to the value of the secret to the offending defendant. *Int'l Indus., Inc. v. Warren Petroleum Corp.*, 248 F.2d 696, 699 (3rd Cir. 1957). In these instances, one can look to the defendant's actual profits. If these cannot be determined, the law turns to the value of the secret to the defendant. This mode of assessing damages leads to the application of the "reasonable royalty" standard. The Fifth Circuit borrowed this test from a line of patent cases where there was no obvious damage to the plaintiff by the infringement. The reasonable royalty theory of damages seeks to compensate the patentee (or the victim of trade secret theft) not for lost sales caused by the infringement, but for its lost opportunity to obtain a reasonable royalty that the infringer would have been willing to pay if it had been barred from infringing. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009). Accordingly, this reasonable royalty analysis requires the factfinder to conduct a "hypothetical negotiation" that would have occurred between the parties at the time the infringement or misappropriation began.

To determine a reasonable royalty, the Fifth Circuit suggested the fact finder consider the following factors: (1) the resulting and foreseeable changes in the parties' competitive posture; (2) prices past purchasers or licensees may have paid; (3) the total value of the secret to the plaintiff; (4) the nature and intended use of the secret by the defendant; and (5) any unique

6

factors that may have affected the negotiation—such as alternative products.[1] *University Computing*, 504 F.2d at 539 (citing *Hughes Tool Co. v. G. W. Murphy Industries, Inc.*, 491 F.2d 923, 931 (5th Cir. 1973)).

As noted above, KBR's primary complaint is that Pastore's entire opinion is merely a creation of his own mind. If true, his testimony will not be allowed. Expert testimony must be based upon sufficient facts and data. Further, it must be based upon actual data and/or materials and that information must be the kind of data that is customarily relied upon by experts in the field *and* that is independently reliable. *See comments to* Fed. R. Civ. P. 703.

Thus, mere "ipse dixit" is clearly not admissible.

Trinseo, however, objects to this characterization. First, Trinseo claims that Pastore's opinions track the *University Computing* factors and as such they are not mere "ipse dixit." Plaintiff goes so far as to offer a putative quote from what the Court assumes is one of Pastore's reports, however, the cite for it is an "*Id.*" which sends this Court to KBR's motion to exclude. One of the attachments provided in Trinseo's response seems to be the report to which it intended to cite. It is undated and not signed, but the specific page cite directs one to a section titled "reasonably royalty."

According to his own testimony, Pastore performed no analysis of Trinseo's business position or of KBR's business goals in 2018, nor did he analyze a hypothetical negotiation. That being the case, he will not be allowed to testify as to those factors. While this Court does not require every nuance of every opinion to be fleshed out in a report, an expert must give fair notice in his or her report and Pastore did not. Moreover, Pastore's report omitted any discussion of either the total value of the secret to Trinseo (which includes development costs) and he did

---

[1] While the Fifth Circuit suggested in the occasional case other methods of determining damages (such as the difference in costs to the defendant of developing the trade secret on its own using the cost of development expended by the plaintiff), it noted these alternatives are frequently inadequate.

7

not address any other factors he found that were unique. His report in this regard did not comply with Rule 26. Consequently, he may not address these issues at trial.

KBR also complains about Pastore's testimony regarding "past prices paid." Pastore apparently based his review upon unsigned license agreements between 2011 and 2013. According to KBR, these are "contracts" that were never completed, thus his reliance upon those agreements is totally misplaced. This Court cannot conclude on the record in front of it that these uncompleted agreements are totally without probative value. If nothing else, they would seem to be proof of prices that no one would pay. Pastore was not provided with any "non-hypothetical" transactions and thus did not base his opinions on them. His testimony at trial will be limited to these "agreements" he did review.

Nevertheless, the fact that he was not given actual contracts to review or was given these contracts and chose not to include them in his analysis does not disqualify him from testifying. While KBR complains of this "cherry-picking" approach, the Court finds this approach to be appropriate fodder for cross-examination—not for total exclusion of his testimony. This is the type of "[s]haky but admissible evidence" that must "be attacked by cross examination, contrary evidence and attention to the burden of proof, not exclusion." *Icon-IP Pty Ltd. v. Specialized Bicycle Components, Inc.*, 87 F.Supp.3d 928, 941 (N.D. Cal. 2015) (quoting *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010)).

## B.  Apportionment

The Fifth Circuit has noted that it is generally accepted that the proper measure of damages in cases of trade secret appropriation is determined by reference to the analogous line of cases from patent law cases. Patent law cases hold that when the accused technology does not make up the entirety of the accused product, "apportionment is required." *Finjan, Inc. v. Blue*

*Coat Sys., Inc.*, 879 F.3d 1299, 1309 (Fed. Cir. 2018). The damages "must reflect the value attributable to the infringing features of the [defendant's] product, and no more." *Id.*

KBR complains that Pastore's analysis does not apportion the alleged damages. It argues that Pastore's analysis did not account for:

- The value of individual Trinseo alleged trade secrets, in the likely event that the Court or the jury finds that not all are trade secrets or were misappropriated.
- The value of the alleged Trinseo trade secrets compared to the many aspects of KBR's PCMAX that are already well-known through expired patents and other public disclosures in the decades since Dow developed them.
- The value of the alleged trade secrets from the Enex PC technology package KBR acquired in 2017 and that Trinseo does *not* allege was misappropriated.
- The value of additional technology improvements and engineering services that KBR performed in designing a 100kta PC plant (which no one in the market, including Trinseo, had ever done before).
- The value of KBR's marketing and licensing services that enabled KBR to acquire clients for PCMAX.
- The value of the consulting services and know-how that Trinseo has admitted the ex-Dow employees could rightfully provide without violating confidentiality obligations.

(Doc. No. 125 at 17) (citations omitted).

Trinseo argues that Pastore is not required to apportion if the value of an infringing product "is attributable to the features." (Doc. No. 139 at 19). Thus, Pastore's "all or nothing" approach is based upon Trinseo's "all or nothing" approach. Thus, Trinseo appears willing to gamble that it can convince the jury that the allegedly misappropriated trade secrets provided all of the value of KBR's end usage/product. Obviously if it fails, Pastore's testimony will be totally undermined. This, however, does not make it inadmissible or unreliable, at least at this stage.[2] KBR complains that Pastore did not calculate or consider the value of the head start KBR obtained from the alleged misappropriation. Trinseo has conceded that it is not seeking any

---

[2] KBR suggest that Jerry Duane, one of Trinseo's other experts, admits that there is no evidence that one of the alleged trade secrets was appropriated. This evidence, if believed by the finder of fact, may undercut all of Pastore's purported testimony.

9

damages for the head start. (Doc. No. 187 at 6). Again, this is a litigation strategy that Trinseo has elected to follow that may or may not prove correct, but it does not render Pastore's opinions inadmissible.[3]

KBR's reply brief in support of its motion to exclude invites this Court to pre-judge testimony and circumstance before it has heard them. If Trinseo's experts have not included evidence of what created customer demand, they will not be allowed to testify as to those facts, but that does not mean this Court can assume in the context of a *Daubert* motion that the testimony does not exist.

### C.   Disgorgement Opinion

Pastore opined that KBR was liable for $67 million under a disgorgement theory. KBR combines the arguments as to this disgorgement theory with those as to the reasonable royalty theory. The Court's prior rulings as set out above, therefore, apply to the disgorgement testimony as well.

### D.   Miscellaneous Testimony

Finally, KBR groups many of Pastore's opinions and statements together and complains that he is not competent to testify to these. Most of the opinions under this general attack fall under the heading of PC technology. He is not qualified to opine as to PC technology or about the relative advantages or disadvantages of a certain PC process. Pastore will not be allowed to testify or opine upon the history of the PC industry or the operations of a PC plant—past or present—unless he is qualified by some testimony or experience not readily apparent to this Court and unless such history is set out in one of his two expert reports.

Second, Pastore will not be allowed to opine or testify as to any of the "facts" concerning liability. He has neither the training, expertise, nor background to testify in any of these areas.

---

[3] Having said this, the Court emphasizes that Pastore will not be able to opine on these omitted topics at trial.

Finally, other than what he expressly contemplated by the Rules of Evidence, he will not be allowed to testify or base his testimony on "facts" that are not supported by any competent evidence.

## IV. Conclusion

As outlined above, the Court hereby grants in part and denies in part KBR's Motion to Exclude the Opinions of Thomas Pastore. (Doc. No. 125).

SIGNED at this 30 day of November 2023.

Andrew S. Hanen
United States District Judge