IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Trinseo Europe GmbH, | § | |
|     Plaintiff, | § | |
| v. | § | |
| Stephen Harper (a/k/a Steve Harper), | § | |
| Steve Harper Consulting, Inc. and | § | |
| Polycarbonate Consulting Services, Inc., | § | |
|     Defendants. | § | |
| | § | Civil Action No. 4:20-cv-478 |
| | § | Consolidated with |
| Trinseo Europe GmbH, | § | Civil Action No. 4:20-cv-4051 |
|     Plaintiff, | § | |
| v. | § | |
| Kellogg Brown & Root, LLC, | § | |
| William Davis and Polycarbonate | § | |
| Resins Consulting, LLC, | § | |
|     Defendants. | § | |

**Stephen Harper, Steve Harper Consulting, Inc. and Polycarbonate Consulting Services, Inc.'s Supplemental Rule 50(a) Motion for Judgment as a Matter of Law**

Defendants Stephen Harper ("Harper"), Steve Harper Consulting, Inc. ("SHC") and Polycarbonate Consulting Services, Inc. ("PCS") (collectively, "Harper Defendants") fully join in the Rule 50(a) Motion for Judgment as a Matter of Law filed by all Defendants. In addition, Harper Defendants file this Supplemental Motion under Rule 50(a) and respectfully move this Court to enter judgment as a matter of law in their favor of Plaintiff Trinseo Europe GmbH's ("Trinseo") claims.

## STATEMENT OF THE ISSUES

Whether there is legally sufficient evidence that would permit a reasonable jury to conclude that Harper is individually liable for the actions of SHC and PCS.

Whether there is legally sufficient evidence of damages against Harper Personally.

## ARGUMENT

**A. Judgment As A Matter Of Law Is Warranted On Trinseo's Claim That Harper Should Be Individually Liable For The Actions Of SHC And PCS Because The Evidence Shows Harper Was Neither Entity's Alter Ego As A Matter of Law.**

There is not legally sufficient evidence that would permit a reasonable jury to find that Harper should be held individually liable for the actions of SHC and PCS. Trinseo introduced no evidence whatsoever to support a finding that SHC is an alter ego of Harper, and it introduced insufficient evidence to establish that PCS is an alter ego of Harper.

Both of Harper's entities are Colorado corporations, and accordingly, as the parties agree, the internal affairs doctrine dictates that Colorado veil piercing law controls this question. Under Colorado law, Trinseo must show that it meets each step of a three-step veil piercing test. Trinseo's

evidence fails at each step. *Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*, No. 20-CV-01413-PAB-GPG, 2021 WL 877716, at *4 (D. Colo. Mar. 9, 2021)[1]

At step one, Trinseo was required to produce legally sufficient evidence that Harper is the "alter ego" of SHC and PCS. A corporation "is the alter ego of its shareholder or shareholders when it is a 'mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist.'" *Stockdale v. Ellsworth*, 407 P.3d 571, 576 (Colo. 2017) (citation omitted). To determine whether a corporation is an alter ego, a number of factors are relevant, including whether "(1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a 'mere shell,' (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes." *Id.*

Trinseo failed to produce legally sufficient evidence on seven of the eight factors that would allow a reasonable jury to find that Harper is the alter ego of PCS, and it presented no evidence whatsoever that Harper is the alter ego of SHC. First, the evidence shows both SHC and PCS operated as distinct business entities and each had a separate corporate purpose and existence. SHC was set up and operated to provide consulting services for the Prime 3, Enex, and Luxi projects, whereas PCS was later set up and operated to provide consulting services for KBR. *See* Trial Tr. 101:12-22, Jan. 12, 2024 AM. Second, there is no evidence whatsoever that Harper even

---

[1] *Stone Creek* is generally instructive. There the Colorado District Court granted a 12(b)(6) motion on alter ego despite the defendant being a single shareholder LLC, specifically set up to engage in the transaction complained of, and despite the company being undercapitalized. *Stone Creek Bus. Ctr., LLLP v. Stone Creek-Colorado, LLC*, 2021 WL 877716, at *4–5.

once commingled his personal funds with either entity's corporate funds such that it is unclear which funds belong to whom.  Third, each entity maintained adequate corporate records, including separate bank accounts, separate accounting records, and separate tax returns.  *See* Trial Tr. 102:3-7, Jan. 12, 2024 AM.  Fourth, although Harper and his wife owned both entities, Trinseo has not presented even a modicum of evidence showing how this fact enabled either owner to misuse the corporate form.  *See* Trial Tr. 102:1-2, Jan. 12, 2024 AM.  Similarly, Trinseo has presented zero evidence of undercapitalization or anything suggesting either SHC or PCS operated as "mere shells."  To the contrary, Harper operated the businesses to provide consulting services and even regularly engaged and compensated additional consultants—the "Tech Team"—to provide consulting services by and through SCH and PCS.  *See* Trial Tr. 103:2-25; 104:1-11, Jan. 12, 2024 AM.  The companies were anything but "mere shells."  Finally, even though such small businesses are not expected to follow strict corporate formalities, Harper and his wife did so, regularly holding annual meetings for both businesses.  *See* Trial Tr. 102:8-13, Jan. 12, 2024 AM.  Seven of the eight alter ego factors, therefore, weigh against Trinseo's alter ego argument for both SHC and PCS.

Trinseo has, admittedly, introduced *some* evidence pertaining to the use of PCS corporate funds for noncorporate purposes.  Namely, PCS bank statements show a handful of occasions (four over the multiyear existence of PCS to be precise) when Harper paid personal expenses, including vacation costs, dental expenses, and tax payments, directly from PCS's corporate account instead of first taking out company distributions, to which he is entitled as shareholder, and then making the said payments from a personal account.  *See* Trial Tr. 11-18, Jan. 12, 2024 AM.  But these few instances were "by far the exception," and Harper's accountant later regularly reconciled them as company distributions.  *See* Trial Tr. 11-12, Jan. 12, 2024 AM.

This is not enough to establish alter ego. As Colorado courts have repeatedly stated, not one of the eight factors in the alter ego analysis is alone dispositive. *Newport Steel Corp. v. Thompson,* 757 F. Supp. 1152, 1156–1157 (D. Colo. 1990) ("no one factor controls" the analysis in determining whether the corporate form should be disregarded). Use of corporate funds for noncorporate purposes alone is, therefore, not enough to pierce the corporate veil. Moreover, courts have rejected finding alter ego under these circumstances, especially when the extent to which corporate funds are used for noncorporate purposes pales in comparison to the corporation's remaining transactions. *See e.g., Sedgwick Properties Dev. Corp. v. Hinds,* 456 P.3d 64, 75 (Colo. App. 2019) (holding that, even under a preponderance of the evidence standard, use of corporate assets for non-corporate purposes did not support piercing the corporate veil where the only evidence of such use was payment of a joint settlement); *see also Boxer F2, L.P. v. Flamingo W., Ltd.,* 2016 WL 3355566, at *14 (D. Colo. June 17, 2016), *aff'd sub nom. Boxer F2, L.P. v. Bronchick,* 722 F. App'x 791 (10th Cir. 2018) (noting "since the amount of funds used for noncorporate purposes is only a small percentage of... total expenses... these facts only slightly weigh in favor of piercing the corporate veil"); *cf. BBG Holding Corp. v. K Cap., LLC*, 2022 WL 19298882, at *1 (D. Colo. Oct. 18, 2022) (among other relevant factors to finding alter ego, court found defendant charged a "plethora" of personal expenses through corporate account). Here too, the handful of transactions at issue pales in comparison to PCSs remaining business transactions. Under these precedents and Colorado law generally, Trinseo's evidence is insufficient as a matter of law to establish Harper as the alter ego of PCS in the mind of any reasonable juror.

Moreover, Trinseo presented no evidence whatsoever of Harper using SHC funds to pay personal expenses, and in fact, Trinseo asked no questions and introduced no testimony to even attempt to establish that SHC is the alter ego of Harper.

If the Court concludes that Trinseo has sufficient evidence to survive directed verdict at step one of the test, Trinseo has presented no evidence of the second step.

At step two, Trinseo was required to produce legally sufficient evidence that "the corporate fiction was used to perpetrate a fraud or defeat a rightful claim." *Stockdale*, 407 P.3d at 577. The Colorado Supreme Court has indicated that: "Relevant to this inquiry is whether [insider] transferred its assets to defeat a [a claim]." *In re Phillips*, 139 P.3d 639, 646 (Colo. 2006). But there is not any evidence, much less legally sufficient evidence, that could support a finding that Harper used SHC and PCS to commit fraud or otherwise defeat a rightful claim. There is no evidence Harper used either entity to make fraudulent transfers to himself or anyone else or to hinder, delay or defraud creditors. And there is no evidence the corporate form of either entity was used to defeat any other type of claim. To the contrary, Harper testified that his decision to shut down SHC had nothing to do with Trinseo's lawsuit and came long before he even knew of Trinseo's potential claims against him. *See* Trial Tr. 104:16-22, Jan. 12, 2024 AM. Trinseo has therefore wholly failed to present legally sufficient evidence of this second prong of veil piercing, which is "no less important" than the first. *Griffith v. SSC Pueblo Belmont Operating Co. LLC*, 381 P.3d 308, 313 (Colo. 2016), *as modified on denial of reh'g* (Oct. 17, 2016).

At step three, Trinseo was required to produce legally sufficient evidence that disregarding the corporate form of SHC and PCS would achieve an equitable result. But Trinseo presented no such evidence. Regardless, the evidence shows that disregarding the corporate forms of SHC and PCS would be inequitable and unfair. Harper did not play fast and loose in his work through SHC or PCS, and alternate legal remedies are available to Trinseo should it prevail on its underlying claims. Equity will thus not be served by piercing the corporate veil. *Tisch v. Tisch*, 439 P.3d 89, 99 (Colo. App. 2019).

Veil piercing is "an extraordinary remedy" justified only limited circumstances. *In re Phillips*, 139 P.3d 639, 647 (Colo. 2006)). Here, because there is not a legally sufficient evidentiary basis that would permit a reasonable jury to find in Trinseo's favor regarding its veil-piercing theory, the Court should grant judgment as a matter of law in Harper's favor that he is not individually liable for the actions of SHC and PCS.

### B. Trinseo proffered no evidence of damages against Harper Individually.

As against Defendant Harper individually, Trinseo did not present any evidence of damages against him because Trinseo never disclosed any such computation, and Trinseo's expert did not present any evidence of a damages number against Harper individually. Accordingly, no reasonable jury could award any damages directly against Harper individually because it would have no evidentiary basis to do so. Note that this point is separate from the question of whether there is legally sufficient evidence for a jury to find alter ego as a route to derivative liability for Harper. For this reason, too, Harper is entitled to judgment as a matter of law.

### C. There is no competent evidence of damages against the Harper or Davis Defendants.

The only evidence the jury has been provided on damages as to the Harper and Davis defendants is the entire revenue that SHC, PCS, and Polycarbonate Resin Consulting LLC, ("PRC") made in connection with their consulting work. This number is legally insufficient evidence of damages for two reasons. First, this number does not reflect net profits, the proper measure of damages in this case; and second, this number violates the entire market value rule.

#### 1. No Evidence of Net Profits.

First, the only evidence of damages for unjust enrichment presented by the Plaintiff is revenue. The proper measure of damages is net profits. *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct.

1936, 1946, 207 L. Ed. 2d 401 (2020) ("Courts consistently restricted awards to net profits from wrongdoing after deducting legitimate expenses").

Under Texas law, a plaintiff's burden for recovery of a defendant's profits, at law, is and always has been, net profits. No other measure is good enough, and Courts routinely overturn jury verdicts and dismiss plaintiffs' claims if the plaintiff presents evidence of anything other than net profits. *Kellmann v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Hill v. Premier IMS, Inc.*, No. 01-15-00137-CV, 2016 WL 2745301, at *6 (Tex. App.—Houston [1st Dist.] May 10, 2016, no pet.); *Motion Med. Techs., L.L.C. v. Thermotek, Inc.*, 875 F.3d 765, 779 (5th Cir. 2017).

Under certain specific federal intellectual property statutes, evidence proceeds in a different fashion. For example, under both the Copyright Act and the Lanham Act, the plaintiffs' burden is to provide evidence of revenue, and then the burden shifts to the defendant to establish costs.[2] However, that specific statutory language, creating this burden-shifting framework in the context of copyright and trademark law, is entirely absent from the Defend Trade Secret Act ("DTSA"). Surely, if Congress intended to embody this burden-shifting framework in the DTSA, they would have done so, as they did in both the trademark and copyright context.

Trinseo will likely cite to the Restatement (Third) of Unfair Competition § 45 cmt. f (1995), which embraces this burden-shifting framework. But there is no authority in the Fifth Circuit, or to the best of undersigned counsel's research, a single District Court decision within the Fifth Circuit embracing the Restatement's suggestion of burden-shifting in the context of unjust

---

[2] 15 U.S.C. § 1117(a) (2006) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed"); 17 U.S.C. § 504(b) (2006) ("In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work").

enrichment under the DTSA. In fact, there is no authority for importing this burden-shifting framework into the DTSA.[3] To the contrary, the Fifth Circuit in its seminal case on trade secret damages, *Univ. Computing Co. v. Lykes-Youngstown Corp.*, strongly suggests it disagrees with the Restatement´s position. 504 F.2d 518, 536 (5th Cir. 1974). "Normally only the defendant's actual profits can be used as a measure of damages ***in cases where profits can be proved***." *Id.* (emphasis added).

In its damages report, Plaintiff relies on *Liu v. Sec. & Exch. Comm'n*, 140 S. Ct. 1936, 1946, 207 L. Ed. 2d 401 (2020) to suggest that it can recover revenues instead of profits. But that case—which has nothing to do with trade secrets—reaches the opposite conclusion. There, the Court held that "Courts may not enter disgorgement awards that exceed the gains 'made upon any business or investment, when both the receipts and payments are taken into the account.'" *Id.* While *Liu* suggests that certain narrow categories of expenses may, in equity, not be deductible, this exception is very narrow and not applicable here:

> It is true that when the "entire profit of a business or undertaking" results from the wrongdoing, a defendant may be denied "inequitable deductions" such as for personal services. But that exception requires ascertaining whether expenses are legitimate or whether they are merely wrongful gains "under another name." Doing so will ensure that any disgorgement award falls within the limits of equity practice while preventing defendants from profiting from their own wrong.

*Id.* at 1950. As discussed below, there is no evidence that the "entire profit" of PCS, SHC or PRC results from the wrongdoing, and in fact, the evidence is to the contrary. However, even if Plaintiff could satisfy that element, Plaintiff still made no effort to separate equitable from inequitable

---

[3] A few Courts have cited to the Restatement; however, this is generally for the proposition that avoided costs—an alternative measurement of damages not alleged here—are recoverable in Trade Secret Misappropriation cases. See for example, *Syntel Sterling Best Shores Mauritius Ltd. v. The TriZetto Group, Inc.*, 68 F.4th 792, 809 (2d Cir. 2023), cert. denied, 144 S. Ct. 352 (2023).

deductions. For example, in *Liu*, despite finding that the entire business enterprise was fraudulent, the Court only counted payments to *Liu* and his wife to be "wrongful gains under another name" and specifically remanded the case to deduct other expenses such as rent and utilities. *Id.* Here, there is ample evidence of travel and other incidental expenses, which would never qualify as "inequitable deductions," even under the standard articulated in *Liu*.

### 2. No Apportionment and Violation of Entire Market Value Rule.

Second, the only measure of damages presented to the jury is the entire value of services provided by the consultants. Unless the entire value of the services embraces the alleged trade secrets, apportionment is required. *Finjan, Inc. v. Blue Coat Sys., Inc.,* 879 F.3d 1299, 1309 (Fed. Cir. 2018).

The jury heard no evidence that 100% of the work the Harper entities (or for that matter Davis entities) provided was based on the alleged trade secret. In fact, the testimony was the opposite. Mr. Duane testified that not all the tech team's work was alleged misappropriation. Trial Tr. 119:07–120:2, Jan. 11, 2024 AM. Accordingly, the undisputed testimony from Plaintiff's own witness in this case is that not all of the tech team's offerings embraced the alleged trade secrets.

Furthermore, the entire market value rule requires a showing that the alleged infringing features are the "basis for customer demand." *Id.* Here, there is no evidence that the inclusion of the materials Trinseo alleges are a trade secret customers demand in the case. To the contrary, Harper testified that he was paid money for the work he did for Yantai back in 2006 or 2007, long before he had access to any of the documents Trinseo alleges are a trade secret. Trial Tr. 105:18–108:7, Jan. 12, 2024 AM. This unrefuted evidence shows a demand for Harper's services separate and apart from the alleged infringing features. Moreover, the jury heard repeated testimony that Harper and the tech team provided services in the PC space to Mustang and were paid for those

services. Again, this shows that the alleged trade secrets were not the sole basis of customer demand. Accordingly, the entire value of the Harper and Davis defendants´ work is not the proper measure of damages in this case.

This undisputed evidence is proof that there was a market for the tech team´s consulting services in polycarbonate even without the alleged trade secret documents. For the entire market value rule to apply, the patentee must prove that the patent-related feature is the basis for customer demand. Trinseo has not and cannot do so.

## CONCLUSION

For each and all the reasons stated above, the Court should grant judgment as a matter of law in favor of the Harper Defendants under Rule 50(a).

Dated: January 19, 2024

Respectfully submitted,

/s/ Benjamin F. Foster
Benjamin F. Foster
Texas State Bar No. 24080898
ben@fosteryarborough.com
FOSTER YARBOROUGH, PLLC
917 Franklin, Suite 220
Houston, Texas 77002
Telephone: (713) 331-5254
Facsimile: (713) 513-5202

*Counsel for Stephen Harper (a/k/a Steve Harper), Steve Harper Consulting, Inc. and Polycarbonate Consulting Services, Inc.*

## CERTIFICATE OF SERVICE

I certify that on January 19, 2024, this document properly was served on counsel of record via electronic filing in accordance with the USDC, Southern District of Texas Procedures for Electronic Filing:

/s/ Benjamin F. Foster
Benjamin F. Foster