**In the United States District Court**
**for the Southern District of Texas**
**Houston Division**

| | | |
|---|---|---|
| **Trinseo Europe GmbH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **Civil Action Nos. 4:20-cv-00478 &** |
| **Stephen Harper (a/k/a Steve Harper),** | § | **4:20-cv-04051** |
| **Steve Harper Consulting, Inc. and** | § | |
| **Polycarbonate Consulting Services, Inc.,** | § | **Jury Demanded** |
| **Kellogg Brown & Root, LLC, William** | § | |
| **"Bill" Davis and Polycarbonate Resins** | § | |
| **Consultants, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

---

**Plaintiff's Opposed Motion for Entry of Final Judgment (and Permanent Injunction) against Defendants Kellogg, Brown & Root, LLC, Stephen Harper, Polycarbonate Consulting Services, Inc., and Steve Harper Consulting, Inc.**

**FILED UNDER SEAL**

---

## <u>TABLE OF CONTENTS</u>

A.   The Court should enter judgment for Trinseo and against KBR and award Trinseo $50,000,000, along with prejudgment interest, post-judgment interest, and taxable court costs. .. 6

1.   The Court should award prejudgment interest against KBR. ............................................ 6

a.   The DTSA does not preclude prejudgment interest. ....................................................... 7

b.   Prejudgment interest furthers Congressional policy. ..................................................... 8

c.   The Court should use Trinseo's weighted average cost of capital — or, alternatively, Trinseo's actual cost of borrowing — as the prejudgment interest rate. ............................. 11

d.   Prejudgment interest should accrue from the date KBR misappropriated the Trinseo Trade Secrets until the date judgment is entered. ................................................................. 17

2.   The Court should award post-judgment interest against KBR on all amounts in the final judgment and taxable court costs as set forth in Trinseo's Motion for Costs. ......................... 18

B.   The Court should enter judgment for Trinseo and against the Harper Defendants awarding Trinseo the amount of damages the jury calculated, along with post-judgment interest and taxable court costs. .................................................................................................................... 19

C.   The Court should enter judgment that Trinseo take nothing against Davis and Polycarbonate Resins Consultants, LLC and that they take nothing from Trinseo. ............................................ 19

D.   The Court should include a permanent injunction against the Judgment Defendants in its final judgment. ........................................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A-s 1-3 Sam Houston Town Ctr. LP v. SOS Furniture Co., Inc.*,
No. 4:19-CV-2664, 2020 WL 7247783 (S.D. Tex. Dec. 9, 2020) (Hanen, J.) .......................10

*Agrofresh Inc. v. Essentiv LLC*,
No. CV 16-662 (MN), 2020 WL 7024867 (D. Del. Nov. 30, 2020) ...................................9, 12

*Allstate Ins. Co. v. Plambeck*,
802 F.3d 665 (5th Cir. 2015) ...................................................................................................10

*Matter of AmeriSciences, L.P.*,
781 Fed. Appx. 298 (5th Cir. 2019) ..........................................................................................9

*ASARCO LLC v. Americas Mining Corp.*,
404 B.R. 150 (S.D. Tex. 2009) (Hanen, J.) .................................................................7, 10, 12

*Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*,
No. 4:17-CV-1400, 2020 WL 3525485 (S.D. Tex. Apr. 21, 2020) (Hanen, J.) .....................14

*Bosnor, S.A. de C.V. v. Tug L.A. Barrios*,
796 F.2d 776 (5th Cir. 1986) ...........................................................................................12, 17

*City of Milwaukee v. Cement Div., Nat. Gypsum Co.*,
515 U.S. 189 (1995)..................................................................................................................10

*Clearline Techs. Ltd. v. Cooper B-Line, Inc.*,
948 F. Supp. 2d 691 (S.D. Tex. 2013) (Ellison, J.)..................................................................12

*Cochran v. U.S. SEC*,
20 F.4th 194 (5th Cir. 2021), *aff'd and remanded sub nom. Axon Enter., Inc.
v. FTC*, 598 U.S. 175 (2023)......................................................................................................8

*Comcast IP Holdings I LLC v. Spring Commc'ns Co., L.P.*,
850 F.3d 1302 (Fed. Cir. 2017)................................................................................................18

*Complaint of M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1977) ...............................................12, 17

*Compulife Software, Inc. v. Rutstein*,
No. 9:16-CV-80808-BER, 2021 WL 5830554 (S.D. Fla. Oct. 20, 2021),
*appeal docketed*, No. 21-14072 (11th Cir. Nov. 18, 2021) ......................................................9

*Contango Operators, Inc. v. United States*,
9 F. Supp. 3d 735 (S.D. Tex. 2014) (Lake, J.), *aff'd sub nom. Contango
Operators, Inc. v. Weeks Marine, Inc.*, 613 Fed. Appx. 281 (5th Cir. 2015) ...................12, 17

*Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc.*,
    No. 4:15-CV-2172, 2020 WL 13612289 (S.D. Tex. Dec. 9, 2020).........................................10

*Digital Drilling Data Sys. LLC v. Petrolink Services Inc.*,
    No. 4:15-CV-2172, 2019 WL 282038 (S.D. Tex. Jan. 22, 2019) (Hanen, J.),
    *aff'd in part, vacated in part, and remanded sub nom. Digital Drilling Data
    Sys., L.L.C. v. Petrolink Services, Inc.*, 965 F.3d 365 (5th Cir. 2020).....................................10

*Eagle Capital Corp. v. R E Miller Indus., LLC*,
    No. 4:19-CV-01190, 2020 WL 5604826 (S.D. Tex. Sept. 18, 2020) (Hanen,
    J.).........................................................................................................................................10

*Finesse Wireless LLC v. AT&T Mobility LLC*,
    No. 2:21-CV-00316-JRG, 2023 WL 5613262 (E.D. Tex. Aug. 30, 2023)...........................18

*Fuchs v. Lifetime Doors, Inc.*,
    939 F.2d 1275 (5th Cir. 1991) ...........................................................................................19

*Gen. Motors Corp. v. Devex Corp.*,
    461 U.S. 648 (1983)............................................................................................................18

*Georgia-Pac. Consumer Products LP v. von Drehle Corp.*,
    781 F.3d 710 (4th Cir. 2015) ................................................................................................8

*Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc.*,
    874 F.2d 431 (7th Cir. 1989) .........................................................................................11, 17

*In re Hayes Microcomputer Prods. Patent Lit.*,
    766 F Supp. 818 (N.D. Cal.), *aff'd*, 982 F.2d 1527 (Fed. Cir. 1992).................................16

*Idom v. Natchez-Adams Sch. Dist.*,
    No. 5:14-CV-38(DCB)(MTP), 2016 WL 320954 (S.D. Miss. Jan. 25, 2016) .......................12

*Matter of Imperial Petroleum Recovery Corp.*,
    84 F.4th 264 (5th Cir. 2023) ...............................................................................................19

*Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*,
    No. 4:14-CV-00371, 2017 WL 1716589 (E.D. Tex. Apr. 27, 2017), *aff'd*, 643
    Fed. Appx. 1013 (Fed. Cir. 2016).........................................................................................18

*Invitrogen Corp. v. Biocrest Mfg., L.P.*,
    No. A-01-CA-167-SS, 2006 WL 8435710 (W.D. Tex. Oct. 31, 2006) (Sparks,
    J.).........................................................................................................................................17

*Laitram Corp. v. NEC Corp.*,
    115 F.3d 947 (Fed. Cir. 1997).............................................................................................16

*Lightning Box Games Pty, Ltd. v. Plaor, Inc.*,
    2017 WL 7310782 (N.D. Cal. Dec. 29, 2017)......................................................................21

*Maya Special Mar. Enter. v. Crochet*,
    No. 4:13-CV-01871, 2016 WL 5243085 (S.D. Tex. Sept. 22, 2016) (Ellison,
    J.)................................................................................................................12

*Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*,
    248 F. Supp. 3d 837 (S.D. Tex. 2017) (Atlas, J.) ..................................19

*Miles v. Apex Marine Corp.*,
    498 U.S. 19 (1990)................................................................................8, 9

*Monessen Sw. Ry. Co. v. Morgan*,
    486 U.S. 330 (1988)................................................................................10

*Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*,
    779 F.3d 345 (5th Cir. 2015) ..........................................................12, 17

*Osterneck v. Ernst & Whinney*,
    489 U.S. 169 (1989)..................................................................................9

*In re Pampa Marine, Inc.*,
    1979 WL 6504717 (E.D. La. Dec. 14, 1979)........................................17

*Paragon Asset Co. Ltd. v. Gulf Copper & Mfg. Corp.*,
    No. 1:17-CV-203, 2022 WL 3445744 (S.D. Tex. Aug. 17, 2022) (Rodriguez,
    J.)................................................................................................................12

*Pillsbury Co. v. Midland Enterprises, Inc.*,
    715 F. Supp. 738 (E.D. La. 1989), *aff'd and remanded*, 904 F.2d 317 (5th Cir.
    1990) ........................................................................................................12

*Sarhank Group v. Oracle Corp.*,
    No. 01 CIV. 1285 (DAB), 2004 WL 324881 (S.D.N.Y. Feb. 19, 2004)................12

*In re Schooler*,
    453 B.R. 815 (Bankr. N.D. Tex. 2011)....................................................8

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020)..............................................................18

*Skretvedt v. E.I. DuPont De Nemours*,
    372 F.3d 193 (3d Cir. 2004)....................................................................11

*TB Food USA, LLC v. Am. Mariculture, Inc.*,
    No. 2:17-CV-9-FTM-29NPM, 2022 WL 3028061 (M.D. Fla. Aug. 1, 2022),
    *appeal docketed*, No. 22-12937 (11th Cir. Sept. 1, 2022) ........................9

*Thomas v. Tex. Dep't of Criminal Justice*,
    297 F.3d 361 (5th Cir. 2002) ..................................................................10

*Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*,
  No. CIV.A. H-03-2910, 2006 WL 3227315 (S.D. Tex. Nov. 6, 2006) (Lake,
  J.) ..................................................................................................................... 18

*United States v. Colorado Mufflers Unlimited, Inc.*,
  116 Fed. Appx. 218 (10th Cir. 2004) .................................................................. 8

*West Virginia v. United States*,
  479 U.S. 305 (1987) ....................................................................................... 9, 18

*Westchester Surplus Lines Ins. Co. v. Maverick Tube Corp.*,
  722 F. Supp. 2d 787 (S.D. Tex. 2010) (Rosenthal, J.) ...................................... 11

**Statutes**

18 U.S.C. § 1836(b)(3)(A) .......................................................................................... 21

18 U.S.C. § 1836(b)(3)(B) ............................................................................................ 8

28 U.S.C. § 1961(a)–(b) .............................................................................................. 19

28 U.S.C. § 2674 ........................................................................................................... 9

46 U.S.C. § 31107 ......................................................................................................... 9

DEFEND TRADE SECRETS ACT OF 2016, Pub. L. No. 114-153, § 5, 130 Stat. 376,
  383–84 ............................................................................................................... 11

**Other Authorities**

FED. R. CIV. P. 58(b)(2) ................................................................................................ 7

FED. R. CIV. P. 58(d) .................................................................................................... 7

Prevailing party Trinseo Europe GmbH requests the Court to enter final judgment in accordance with the jury's verdict that found Defendants Kellogg Brown & Root, LLC, Steve Harper Consulting, Inc., Polycarbonate Consulting Services, Inc., and Stephen Harper (collectively the "Judgment Defendants") liable of the misappropriation of the four trade secrets in the jury's verdict (the "Trinseo Trade Secrets") as set forth below.  FED. R. CIV. P. 58(d). Concurrently with this Motion, Trinseo is also filing a separate motion seeking entry of a permanent injunction.

**A.**  **The Court should enter judgment for Trinseo and against KBR and award Trinseo $50,000,000, along with prejudgment interest, post-judgment interest, and taxable court costs.**

Federal Rule of Civil Procedure 58(b)(2) outlines those circumstances under which the Court must approve final judgment before the clerk can enter final judgment, which includes the situation where, as here, "the jury returns a special verdict or a general verdict with answers to written questions."  FED. R. CIV. P. 58(b)(2).  Here, the jury found KBR liable for misappropriation of Trinseo's Trade Secrets and awarded reasonable royalty damages of $50,000,000, unjust enrichment damages of $21,206,132, and rejected every affirmative defense the Court submitted. [Doc. 321, at pp. 13-14 (pp. 26-27 of the document); pp. 19-24 (pp. 32-37 of the document)].  Trinseo hereby elects to recover the reasonable royalty measurement of damages, and based on the jury's findings, the Court should enter judgment for Trinseo and against KBR for actual damages of $50,000,000.  The Court should also award prejudgment interest, post judgment interest, and taxable court costs, as outlined below.

1.  The Court should award prejudgment interest against KBR.

"The Fifth Circuit applies a two-step analysis to determine whether an award of prejudgment interest is within a court's discretion: (1) whether the federal act that creates the cause of action precludes such an award; and (2) whether such an award furthers the congressional policies of the federal act."  *ASARCO LLC v. Americas Mining Corp.*, 404 B.R.

150, 163 (S.D. Tex. 2009) (Hanen, J.) (citing *In re Texas Gen. Petroleum Corp.*, 52 F.3d 1330, 1339 (5th Cir. 1995)).  Under this test, the Court can and should award Trinseo prejudgment interest on Trinseo's DTSA claims at the rate of 10.7% per year (which was Trinseo's weighted average cost of capital at the time KBR misappropriated the Trinseo's Trade Secrets), with such interest beginning from the date KBR began injuring Trinseo by misappropriating its trade secrets (November 30, 2017) until the date the Court enters its final judgment.

> a.      *The DTSA does not preclude prejudgment interest.*

Trinseo meets the first prong of the Fifth Circuit's test since the DTSA does not bar an award of prejudgment interest.  *See* 18 U.S.C. § 1836(b)(3)(B).  As for the second prong, the Court must review the text of the DTSA to discern whether Congress intended for prejudgment interest to be available under the DTSA.  *See Cochran v. U.S. SEC*, 20 F.4th 194, 200 (5th Cir. 2021) (stating that statutory construction "start[s], of course, with the statutory text") (internal citation omitted), *aff'd and remanded sub nom. Axon Enter., Inc. v. FTC*, 598 U.S. 175 (2023).

While the DTSA makes no express mention of prejudgment interest, that is not the end of the inquiry.  "A statute's silence does not preclude an award of prejudgment interest."  *In re Schooler*, 453 B.R. 815, 817–18 (Bankr. N.D. Tex. 2011) (citing *Guidry v. Booker Drilling Co.*, 901 F.2d 485, 488 (5th Cir. 1990)).  Rather, "as a general matter, prejudgment interest may be awarded at the district court's discretion *unless* the applicable statute provides otherwise." *Georgia-Pac. Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 722 (4th Cir. 2015) (emphasis added)); *accord United States v. Colorado Mufflers Unlimited, Inc.*, 116 Fed. Appx. 218, 222 (10th Cir. 2004) ("While in general, the award of prejudgment interest in a case under federal law is a matter left to the sound discretion of the trial court, it is clear that this general rule may be trumped by the command of a federal statute.") (cleaned up).

The Court must presume that Congress was aware of this rule when it enacted the DTSA. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that Congress is aware of

existing law when it passes legislation."). The Court must also presume that the decision to enact the DTSA without a provision expressly barring prejudgment interest can only mean that Congress intended to leave the prejudgment interest decision to a trial court's discretion. *Id*. After all, Congress has precluded prejudgment interest as a remedy for other federal claims. *See* 28 U.S.C. § 2674 ("The United States . . . shall not be liable for interest prior to judgment . . . ."); 46 U.S.C. § 31107 ("A judgment in a civil action under this chapter may not include interest for the period before the judgment is issued . . . ."). Thus, this Court possesses the discretion under the DTSA to award Trinseo prejudgment interest.

### b.   *Prejudgment interest furthers Congressional policy.*

The Court must next consider whether awarding Trinseo prejudgment interest furthers the Congressional policies of the DTSA. On that point, several courts — including the Fifth Circuit — have found it proper to award prejudgment interest for trade secret misappropriation claims. *See Matter of AmeriSciences, L.P.*, 781 Fed. Appx. 298, 307 (5th Cir. 2019); *TB Food USA, LLC v. Am. Mariculture, Inc.*, No. 2:17-CV-9-FTM-29NPM, 2022 WL 3028061, at *17 (M.D. Fla. Aug. 1, 2022), *appeal docketed*, No. 22-12937 (11th Cir. Sept. 1, 2022); *Compulife Software, Inc. v. Rutstein*, No. 9:16-CV-80808-BER, 2021 WL 5830554, at *1 (S.D. Fla. Oct. 20, 2021), *appeal docketed*, No. 21-14072 (11th Cir. Nov. 18, 2021); *Agrofresh Inc. v. Essentiv LLC*, No. CV 16-662 (MN), 2020 WL 7024867, at *26–27 (D. Del. Nov. 30, 2020) (arising from theft and use of documents marked "Dow-Confidential").

An award of prejudgment interest in this case squares with authority from the United States Supreme Court, the Fifth Circuit, and this Court. The United States Supreme Court has held that prejudgment interest "traditionally has been considered part of the compensation due plaintiff" for the "loss of use of money due as damages from the time the claim accrues until judgment is entered." *West Virginia v. United States*, 479 U.S. 305, 311 n.2 (1987); *accord Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989) ("we have repeatedly stated that

prejudgment interest is an element of plaintiff's complete compensation" (cleaned up));
*Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 335 (1988) ("Prejudgment interest is normally
designed to make the plaintiff whole and is part of the actual damages sought to be recovered.");
*City of Milwaukee v. Cement Div., Nat. Gypsum Co*., 515 U.S. 189, 195 (1995) (An award of
prejudgment interest furthers the longstanding policy of federal courts "to ensure that an injured
party is fully compensated for its loss.").  Describing its cases as reflecting "strong presumption
in favor of awarding pre-judgment interest," *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 679
(5th Cir. 2015), the Fifth Circuit has stated that "[c]ourts should award prejudgment interest
whenever a certain sum" is awarded by the jury, as it was here.  *Id.* (quoting *Thomas v. Tex.
Dep't of Criminal Justice*, 297 F.3d 361, 372 (5th Cir. 2002)).  The reasoning for the Fifth
Circuit's strong presumption is explicitly stated in the *Thomas* opinion — "[r]efusing to award
prejudgment interest ignores the time value of money and fails to make the plaintiff whole."
*Thomas*, 297 F.3d at 372.  And perhaps in recognition of these authorities, Trinseo's research
reflects many cases in which this Court has award prejudgment interest.[1]  In fact, this Court has
employed its equitable powers to ensure that those who misappropriate intellectual property are
not rewarded, but are instead deterred from doing it again.  *Digital Drilling Data Sys., L.L.C. v.
Petrolink Services, Inc.*, No. 4:15-CV-2172, 2020 WL 13612289, at *5 (S.D. Tex. Dec. 9, 2020)
(refusing to award attorney's fees to defendant who prevailed in copyright case because the
defendant "brazenly and wrongfully misappropriated [the plaintiff's] copyrighted property" and

---

[1]   *ASARCO LLC*, 404 B.R. at 182–83 (awarding costs and maximum prejudgment interest of 10%); *Digital Drilling Data Sys. LLC v. Petrolink Services Inc.*, No. 4:15-CV-2172, 2019 WL 282038, at *3 (S.D. Tex. Jan. 22, 2019) (Hanen, J.) (awarding 5.25% prejudgment interest under Texas law), *aff'd in part, vacated in part, and remanded sub nom. Digital Drilling Data Sys., L.L.C. v. Petrolink Services, Inc*., 965 F.3d 365 (5th Cir. 2020); *A-s 1-3 Sam Houston Town Ctr. LP v. SOS Furniture Co., Inc*., No. 4:19-CV-2664, 2020 WL 7247783, at *1 (S.D. Tex. Dec. 9, 2020) (Hanen, J.) (granting summary judgment in lease breach case and awarding costs and prejudgment interest of 18% per contract); *Busbice v. Nix*, 4:19-cv-02399, Doc. No. 29 (S.D. Tex. Oct. 22, 2020) (Hanen, J.) (awarding 8% prejudgment interest per contract after granting plaintiff's motion for summary judgment); *Eagle Capital Corp. v. R E Miller Indus., LLC*, No. 4:19-CV-01190, 2020 WL 5604826, at *2 (S.D. Tex. Sept. 18, 2020) (Hanen, J.) (granting plaintiff's motion for summary judgment and awarding prejudgment interest at 5%); *Impact Fluid Solutions, LP v. Bariven, S.A.*, 4:19-cv-00652 at Doc. 90 (S.D. Tex. Dec. 15, 2021) (Hanen, J.) (awarding 5% prejudgment interest under Texas law after granting plaintiff's motion for summary judgment).

"should not be rewarded for such misconduct as that will only encourage it and others to pilfer some other company's property the next time it finds itself at a competitive disadvantage").

Besides these pronouncements from the Supreme Court and the Fifth Circuit, there are other reasons the Court should award prejudgment interest here.   Doing so furthers the Congressional policy of deterring trade secret theft and affording complete compensation when one person misuses the intellectual property of another.  *See* DEFEND TRADE SECRETS ACT OF 2016, Pub. L. No. 114-153, § 5, 130 Stat. 376, 383–84 (enacting the DTSA because "trade secret theft occurs in the United States and around the world" and "harms the companies that own the trade secrets and the employees of the companies").   And an award of prejudgment interest promotes settlement and deters the artful misappropriator from benefitting from the inherent delays of litigation.  *Skretvedt v. E.I. DuPont De Nemours*, 372 F.3d 193, 208 (3d Cir. 2004) (holding that ERISA affords cause of action for interest on late payment of benefits because late payment "effectively deprives the beneficiary of the time value of his or her money" and creates "a financial incentive for [ERISA defendants] to delay payment and thus retain interest that rightfully belongs to the beneficiary"); *Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc*., 874 F.2d 431, 436 (7th Cir. 1989) (awarding prejudgment interest in trademark infringement case and stating that "prejudgment interest should be presumptively available to victims of federal law violations," for "[w]ithout it, compensation of the plaintiff is incomplete and the defendant has an incentive to delay"); *Westchester Surplus Lines Ins. Co. v. Maverick Tube Corp*., 722 F. Supp. 2d 787, 802 (S.D. Tex. 2010) (Rosenthal, J.) (recognizing dual purpose of prejudgment interest to blunt incentive to prolong litigation to take advantage of the time value of money and deter attempts to unfairly benefit from the inherent delays of litigation).

For these reasons, the Fifth Circuit's two-part test should lead to the Court's awarding Trinseo prejudgment interest on its DTSA claim.

> c.     The Court should use Trinseo's weighted average cost of capital — or, alternatively, Trinseo's actual cost of borrowing — as the prejudgment interest rate.

The two variables that district courts most frequently employ to fashion a fair award of prejudgment interest are the interest rate and the time period during which prejudgment interest accrues.  *See Bosnor, S.A. de C.V. v. Tug L.A. Barrios*, 796 F.2d 776, 786 (5th Cir. 1986); *Paragon Asset Co. Ltd. v. Gulf Copper & Mfg. Corp.*, No. 1:17-CV-203, 2022 WL 3445744, at *42 (S.D. Tex. Aug. 17, 2022) (Rodriguez, J.).  To determine the proper interest rate, a court should look to "reasonable guideposts indicating a fair level of compensation."  *Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC*, 779 F.3d 345, 351 (5th Cir. 2015); *accord Paragon Asset Co. Ltd.*, 2022 WL 3445744, at *42.  On that issue, there are several sources the Court can consult, including:

- The plaintiff's actual cost of borrowing money.  *See Offshore Marine Contractors, Inc.*, 779 F.3d at 351; *Bosnor, S.A. de C.V.*, 796 F.2d at 786; *Contango Operators, Inc. v. United States*, 9 F. Supp. 3d 735, 759 (S.D. Tex. 2014) (Lake, J.), *aff'd sub nom. Contango Operators, Inc. v. Weeks Marine, Inc.*, 613 Fed. Appx. 281 (5th Cir. 2015); *Complaint of M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1977) ("it was not an abuse of discretion for the district judge to award interest at a rate equivalent to the injured party's cost of borrowing, even though this rate was greater than the prevailing statutory rate").

- The cost of borrowing based on the prime rate.  *See Maya Special Mar. Enter. v. Crochet*, No. 4:13-CV-01871, 2016 WL 5243085, at *2 (S.D. Tex. Sept. 22, 2016) (Ellison, J.); *Clearline Techs. Ltd. v. Cooper B-Line, Inc.*, 948 F. Supp. 2d 691, 714 (S.D. Tex. 2013) (Ellison, J.) (awarding prejudgment interest compounded annually based on prime rate in trademark infringement case); *Idom v. Natchez-Adams Sch. Dist.*, No. 5:14-CV-38(DCB)(MTP), 2016 WL 320954, at *9 (S.D. Miss. Jan. 25, 2016); *Agrofresh Inc.*, 2020 WL 7024867 at *27 (D. Del. Nov. 30, 2020) (awarding in DTSA case prejudgment interest at prime rate compounded quarterly).

- The federal post-judgment interest rate.  *See Sarhank Group v. Oracle Corp.*, No. 01 CIV. 1285 (DAB), 2004 WL 324881, at *6 (S.D.N.Y. Feb. 19, 2004); *Pillsbury Co. v. Midland Enterprises, Inc.*, 715 F. Supp. 738, 772 (E.D. La. 1989), *aff'd and remanded*, 904 F.2d 317 (5th Cir. 1990).

- The prejudgment interest rate for the state in which the Court sits.  *See ASARCO LLC*, 404 B.R. at 163–64; *see also Offshore Marine Contractors, Inc.*, 779 F.3d at 351; *Maya Special Mar. Enter.*, 2016 WL 5243085, at *2.

Since prejudgment interest is awarded to make a plaintiff whole for the injury it sustained because of a defendant's misconduct, a "fair" prejudgment interest rate is one that ensures Trinseo is compensated fully for its injuries.  To make Trinseo whole for the DTSA injury the jury found, the Court should set the interest rate at Trinseo's weighted average cost of capital ("WACC"),[2] which was 10.7% between January 1, 2017 and December 31, 2018.  [**Exhibit 1**, Declaration of Johanna Frisch ("*Frisch Decl*."), at ¶¶ 5–7].  This rate is fair, because it fully compensates Trinseo for the harm KBR caused under Trinseo's specific circumstances at the time KBR's misappropriation began.

Approximately four months before the date KBR began misappropriating the Trinseo's Trade Secrets, Trinseo's ultimate parent caused a subsidiary to issue $500 million in Senior Notes that carried a fixed annual interest rate of 5.375% that would become due in 2025.[3]  [**Exhibit 2**, Declaration of Angelo Chaclas ("*Chaclas Decl*."), at ¶ 2].  That financing, however, was in addition to the equity Trinseo sold in its June 2014 initial public offering.[4]  [*Id*.].  Had KBR paid Trinseo the reasonable royalty that the jury found it should have, those funds would have been at Trinseo's disposal, which would have either reduced the amount Trinseo had to borrow during that period of time or provided Trinseo with working capital to effectuate stock repurchases.  [*Id*. at ¶ 4].  In that regard, Trinseo began what eventually became a nearly

---

[2]   A company's Weighted Average Cost of Capital (WACC) represents its blended cost of capital across all sources, including common shares, preferred shares (if any), and debt.  [*Frisch Decl*. at ¶ 2].  The cost for each type of capital is weighted by its percentage of total capital and then are all added together.  [*Id*.].  The purpose of WACC is to determine the cost of each part of the company's capital structure based on the proportion of equity and debt it has, each component of which has a cost to the company — i.e., interest for debt and dividends on equity.  [*Id*.].

[3]   *See*          https://www.sec.gov/Archives/edgar/data/1519061/000110465917055520/a17-21320_1ex4d1.htm; https://www.sec.gov/Archives/edgar/data/1519061/000110465917056163/a17-21441_18k.htm   (Trinseo's   SEC Form 8-K filed with the SEC describing transaction).

[4]   *See* https://www.sec.gov/Archives/edgar/data/1519061/000119312514099496/d681018ds1.htm (Trinseo's Form S-1 filed with the SEC for IPO).

$170,000,000 share repurchase program in the fourth quarter of 2017[5] — which was the same time as the November 2017 hypothetical negotiation date that Trinseo advanced to support the reasonable royalty analysis the jury accepted. [*Chaclas Decl.* at ¶ 3]. Trinseo's share repurchase program continued each quarter for a full year thereafter – which was all during the same time period during which KBR was developing its infringing PCMAX™ licensing package that it sold to its two licensees in October 2018 and February 2019:

| Period | Number of Shares Repurchased | Amounts Paid |
|---|---|---|
| Q4 2017[6] | 346,257 | $24,970,964 |
| Q1 2018[7] | 312,980 | $24,243,308 |
| Q2 2018[8] | 471,234 | $34,991,958 |
| Q3 2018[9] | 483,917 | $34,998,100 |
| Q4 2018[10] | 1,002,624 | $50,795,251 |

[*Id.*].

Given these facts, a reasonable royalty compensates Trinseo *only* for the amount KBR should have paid Trinseo for KBR's use of the Trinseo Trade Secrets. It does not account for the amount Trinseo had to pay both to acquire capital and to repurchase shares during that time — expenditures that would have been unnecessary if KBR had compensated Trinseo as the jury found it should have. *See Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-1400,

---

[5]   Q32017 (https://www.sec.gov/Archives/edgar/data/1519061/000155837017008110/tse-20170930x10q.htm #Item2UnregisteredSalesofEquitySecurities).

[6]   Q42017 (https://www.sec.gov/Archives/edgar/data/1519061/000155837018001379/tse-20171231x10k.htm #Item5_267187).

[7]   Q12018 (https://www.sec.gov/Archives/edgar/data/1519061/000155837018003865/tse-20180331x10q.htm #Item2UnregisteredSalesofEquitySecurities).

[8]   Q22018 (https://www.sec.gov/Archives/edgar/data/1519061/000155837018006334/tse-20180630x10q.htm #Item2UnregisteredSalesofEquitySecurities).

[9]   Q32018 (https://www.sec.gov/Archives/edgar/data/1519061/000155837018009161/tse-20180930x10q.htm #Item2UnregisteredSalesofEquitySecurities).

[10]   Q42018 (https://www.sec.gov/Archives/edgar/data/1519061/000155837019001261/tse-20181231x10k.htm #Item5_267187).

2020 WL 3525485, at *2 (S.D. Tex. Apr. 21, 2020) (Hanen, J.) (observing that "whether prejudgment interest should be awarded is based on a but-for causation standard, i.e., prejudgment interest is awarded where 'but for' the wrongful conduct, the plaintiff would have had the damages amount to invest").  While Trinseo is aware that some courts have rejected WACC as the operative prejudgment interest rate, there are reasons why it is an appropriate choice for this case.

First, the rate is slightly lower than the ▮▮▮▮ that KBR's damages expert, David Leathers, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that the jury ultimately rejected. [**Exhibit 3,** Excerpts from Corrected Expert Report of David Leathers ("*Leathers Report*"), at pp. 2–3 (pp. 55 and 108 of Report)].  By using KBR's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and then sponsoring before the jury Leathers' analysis using those figures, KBR clearly adopted WACC as the appropriate measure for interest rates under the circumstances of this case. [**Exhibit 4** Excerpts of Trial Transcript (Day 11 PM) at 64:21 – 70:22].  For KBR to now oppose that same data to fix the proper judgment interest would be wholly inconsistent and inappropriate.  An award to Trinseo for prejudgment interest at levels below KBR's WACC would only reward the artful misappropriator who used the inherent delay in litigation to capture the time value of those funds for itself, a result that federal courts generally seek to prevent through proper prejudgment interest awards.

Second, Trinseo's rate is lower than KBR's own reported WACC for its Technology Business Unit from 2017 to 2020, which is the time during which KBR was benefitting from the stolen trade secrets:



[**Exhibit 5,** Excerpt from KBR008343].

Third, the jury awarded Trinseo only 62.5% of the reasonable royalty Trinseo requested during trial, and the jury also did not find the predicate facts necessary for Trinseo to recover the millions in attorney's fees and costs of litigation it had to expend over the last four years of full-on, no-holds-barred litigation with a well-financed opponent represented by highly regarded counsel. Thus, KBR cannot realistically criticize a prejudgment interest award as punitive or a windfall.

Fourth, most of the courts that have rejected WACC did so because the plaintiff was unable to show that it incurred any costs to acquire capital during the operative period. *See, e.g., Laitram Corp. v. NEC Corp.,* 115 F.3d 947, 955 (Fed. Cir. 1997) (affirming district court's rejection of higher interest rate where there was no evidence of a causal connection between any borrowing and the loss of the use of the money awarded as damages); *In re Hayes Microcomputer Prods. Patent Lit*., 766 F Supp. 818, 824 (N.D. Cal.) (finding it too speculative to award a prejudgment interest rate higher than the California statutory rate because the plaintiff's borrowing may well have had nothing to do with its lost royalties due to the defendants' infringement), *aff'd*, 982 F.2d 1527 (Fed. Cir. 1992). Here, the question of whether Trinseo would have borrowed funds or used those funds to repurchase shares during the relevant time is not speculative — both events occurred during the relevant time period. Trinseo's situation is therefore meaningfully distinguishable from the cases that have rejected WACC as

the operative interest rate.  *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, No. A-01-CA-167-SS, 2006 WL 8435710, at *10 (W.D. Tex. Oct. 31, 2006) (Sparks, J.) ("The Court is unconvinced that the WACC rate is the correct measure of prejudgment interest in this case, particularly because [the plaintiff] has not shown by competent evidence that [the defendant's] infringement actually caused it to incur any debt.").

Finally, the Fifth Circuit has blessed an interest rate based on the plaintiff's cost of borrowing that was essentially equivalent to the rate Trinseo requests here, since that rate represented "compensation for the wrong done."  *Complaint of M/V Vulcan*, 553 F.2d 489, 491 (5th Cir. 1977) (holding it was not an abuse of discretion to set the prejudgment interest rate at 12% because that interest rate was "equivalent to the injured party's cost of borrowing"); *see also In re Pampa Marine, Inc.*, 1979 WL 6504717 (E.D. La. Dec. 14, 1979) (setting the prejudgment interest rate at 12%, which was the injured party's cost of borrowing, because "prejudgment interest is awarded as compensation for the wrong done").

For these reasons, the Court should set the prejudgment interest rate at 10.7% simple interest per year with no compounding.  But, if the Court believes that Trinseo's WACC is not the correct interest rate to use, then Trinseo suggests the Court select 5.375% as the proper rate but compounded quarterly (or at least annually).  Compounding at this rate represents Trinseo's actual cost of borrowing just before the date of the hypothetical negotiation.[11] *Offshore Marine Contractors, Inc.*, 779 F.3d at 351 (approving prejudgment interest based on plaintiff's actual cost of borrowing); *Bosnor, S.A. de C.V.*, 796 F.2d at 786; *Contango Operators*, 9 F. Supp. 3d at 759 (same).  The Court has substantial discretion to determine whether prejudgment interest

---

[11] Should KBR suggest that a rate tied to a Treasury Bill rate is the appropriate rate, the Court should reject it as being too low, since "there is no default risk with Treasury bills." *Gorenstein*, 874 F.2d at 437.  Trinseo did not make a risk-free loan to KBR, but rather had to engage in time-consuming, expensive litigation to recover damages.  Thus, the Treasury Bill rate would not adequately compensate Trinseo for its actual harm.

should be compounded.  *Transocean Offshore Deepwater Drilling, Inc. v. GlobalSantaFe Corp.*, No. CIV.A. H-03-2910, 2006 WL 3227315, at *5 (S.D. Tex. Nov. 6, 2006) (Lake, J.).

> d.      *Prejudgment interest should accrue from the date KBR misappropriated the Trinseo Trade Secrets until the date judgment is entered.*

Finally, the Court must determine *when* prejudgment interest rate began accruing.  The Supreme Court holds generally that "[p]rejudgment interest serves to compensate for the loss of use of money due as damages ***from the time the claim accrues until judgment is entered***, thereby achieving full compensation for the injury those damages are intended to redress."  *W. Virginia*, 479 U.S. at 310 n.2 (emphasis added).  After all, courts select this date in patent infringement cases where a jury awards reasonable royalty damages because the selection of that date compensates the owner "for the foregone use of the money between the time of infringement and the date of the judgment," which in turn places the owner in the same position it would have enjoyed had the infringer entered into a reasonable royalty agreement.  *Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 655–56 (1983); *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065, 1076 (Fed. Cir. 2020) ("Where a jury awards a lump-sum amount as compensation for infringement, the prejudgment interest is properly applied to the entire amount beginning on the first date of the infringement."); *Comcast IP Holdings I LLC v. Spring Commc'ns Co., L.P.*, 850 F.3d 1302, 1315 (Fed. Cir. 2017) (affirming award of pre-judgment interest from the time of the hypothetical negotiation and based on the entire royalty award); *Imperium IP Holdings (Cayman), Ltd. v. Samsung Elecs. Co., Ltd.*, No. 4:14-CV-00371, 2017 WL 1716589, at *4 (E.D. Tex. Apr. 27, 2017) (awarding prejudgment interest compounded quarterly on entire damages from date of first infringement to date of judgment), *aff'd*, 643 Fed. Appx. 1013 (Fed. Cir. 2016); *Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2:21-CV-00316-JRG, 2023 WL 5613262, at *1 (E.D. Tex. Aug. 30, 2023) (granting request of plaintiff — represented by Susman Godfrey, LLP — awarding prejudgment interest on entire lump-sum

amount awarded by jury as compensation for infringement, beginning on the date of the "hypothetical negotiation" to the date of judgment).

Thus, the date on which interest begins accruing should be the first date of infringement, namely, November 30, 2017, the date that KBR agreed in the Joint Pretrial Order it first obtained a copy of Harper's Preliminary Process Description. [*See* Doc. 228 at p. 15, ¶ 39]. That date is more favorable to KBR, inasmuch as its own damages expert (David Leathers) opined ████

████████████████████████████████████████████████████. [*Leathers Report* at pp. 2-3 (pp. 55 and 108 of Report); **Exhibit 4**, Excerpts of Trial Transcript (Day 11 PM) at 16:8–16].

> 2. <u>The Court should award post-judgment interest against KBR on all amounts in the final judgment and taxable court costs as set forth in Trinseo's Motion for Costs.</u>

Trinseo requests an award of post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding the date of the judgment, compounded annually, on all amounts the Court awards in its final judgment, as required by law. 28 U.S.C. § 1961(a)–(b); *Matter of Imperial Petroleum Recovery Corp.*, 84 F.4th 264 (5th Cir. 2023) ("The point of post-judgment interest is to compensate a successful plaintiff for being deprived of compensation for losses incurred between the ascertainment of damage and payment by the defendant."); *Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991) (directing district court to award post-judgment interest on the entire amount of the final judgment including damages and prejudgment interest under 28 U.S.C. 1961); *Mid-Continent Cas. Co. v. Petroleum Sols., Inc.*, 248 F. Supp. 3d 837, 847 (S.D. Tex. 2017) ("Post-judgment interest accrues on the prejudgment interest.") (Atlas, J.) As set forth in its Motion for Costs, Trinseo also requests the Court to tax all legally recoverable costs, jointly and severally, against the Harper Defendants and KBR.

**B.      The Court should enter judgment for Trinseo and against the Harper Defendants awarding Trinseo the amount of damages the jury calculated, along with post-judgment interest and taxable court costs.**

The jury found Defendants Steve Harper Consulting, Inc. ("SHC") and Polycarbonate Consulting Services, Inc. ("PCS") liable for misappropriation of the Trinseo Trade Secrets and awarded Trinseo unjust enrichment damages of $2,930,817 against SHC and $2,549,706 against PCS, respectively.  In addition, the jury found Defendant Stephen Harper liable as the alter ego of both companies under Colorado law and found against the Harper Defendants on all the affirmative defenses that they asserted.  Based on those findings, Trinseo requests judgment for Trinseo and against the Harper Defendants in the following amounts:

| Defendant | Damages amount |
|---|---|
| Steve Harper Consulting, Inc. | $2,930,817 |
| Polycarbonate Consulting Services, Inc. | $2,549,706 |
| Stephen Harper, individually | $5,480,523 |

Because courts frequently reject prejudgment interest on awards for unjust enrichment or disgorgement of profits, Trinseo has decided to forego a request for prejudgment interest against the Harper Defendants.  But the Court should still award post-judgment interest at the highest rate and order the Harper Defendants jointly and severally liable for Trinseo's taxable court costs.

**C.      The Court should enter judgment that Trinseo take nothing against Davis and Polycarbonate Resins Consultants, LLC and that they take nothing from Trinseo.**

Given: (a) the jury's findings that the Davis Defendants did not misappropriate any trade secrets belonging to Trinseo; and (b) the Davis Defendants failure to submit any questions to the jury to recover anything from Trinseo, the Court should enter judgment that neither Trinseo nor the Davis Defendants take anything from one another.  But the Court should include the Davis Defendants in the scope of the permanent injunction requested below, since they served as agents of KBR and had access to documents that embody the Trinseo Trade Secrets.

**D.     The Court should include a permanent injunction against the Judgment Defendants in its final judgment.**

The DTSA expressly authorizes injunctive relief to "prevent any actual or threatened misappropriation" of trade secrets.    18 U.S.C. § 1836(b)(3)(A).    Indeed, injunctions are "common relief" in trade secret cases.  *Lightning Box Games Pty, Ltd. v. Plaor, Inc*., 2017 WL 7310782, at *9 (N.D. Cal. Dec. 29, 2017).  Trinseo requests entry of a permanent injunction as set forth in its separately filed Motion for Permanent Injunction and Appointment of Independent Monitor.

<u>Conclusion</u>

Trinseo will provide a proposed form of final judgment with actual calculations once the Court rules on the pending post-verdict motions and on the additional variables on which prejudgment and post judgment interest can be calculated.

DATED:  March 6, 2024                          Respectfully submitted,

**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By: _____

**Stewart Hoffer**
Texas Bar No. 00790891
SDTX No. 20123
shoffer@hicks-thomas.com
**Stephen M. Loftin**
Texas Bar No. 12489510
SDTX No. 12676
sloftin@hicks-thomas.com
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**Attorneys in Charge for Plaintiff
Trinseo Europe GmbH**

## **Certificate of Service**

I hereby certify that on March 6, 2024, a true and correct copy of this document was served on the parties listed below electronically via the Court's CM/ECF noticing system and/or via email pursuant to the agreement of the parties.

Geoffrey L. Harrison
gharrison@susmangodfrey.com
Matthew Behncke
mbehncke@susmangodfrey.com
Florence T. Chen
fchen@susmangodfrey.com
Katherine Drews
kdrews@susmangodfrey.com
Abigail Noebels
anoebels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Ste. 5100
Houston, Texas 77002

Benjamin Foster
ben@fosteryarborough.com
Alisa Lipski
alisa@fosteryarborough.com
FOSTER YARBOROUGH, LLP
917 Franklin Street, Suite 220
Houston, Texas 77002

Matt Allen
Allen & Nunnally LLP
matt.allen@allen-nunnally.com
3701 Kirby Drive, Suite 1212
Houston, Texas 77098

_____

**Stewart Hoffer**