**In the United States District Court
for the Southern District of Texas
Houston Division**

| | | |
|---|---|---|
| **Trinseo Europe GmbH,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **Stephen Harper (a/k/a Steve Harper),** | § | **Civil Action No. 4:20-cv-00478** |
| **Steve Harper Consulting, Inc. and** | § | *consolidated with* |
| **Polycarbonate Consulting Services, Inc.,** | § | **Civil Action No. 4:20-cv-04051** |
| **Kellogg Brown & Root, LLC, William** | § | |
| **"Bill" Davis and Polycarbonate Resins** | § | |
| **Consultants, LLC,** | § | |
| | § | |
| *Defendants.* | § | |

---

**Plaintiff's Response to Harper Defendants' Motion for FRCP 50(b) JMOL
And Motion for FRCP 52(c) Judgment on Partial Findings**

**[Doc. 333]**

**FILED UNDER SEAL**

---

DATED:  April 26, 2024

Respectfully submitted,

**HICKS THOMAS LLP**
A REGISTERED LIMITED LIABILITY PARTNERSHIP

By: _____

**Stewart Hoffer**
Texas Bar No. 00790891
SDTX No. 20123
shoffer@hicks-thomas.com
**Eric Grant**
Texas Bar No. 12489510
SDTX No. 12676
grant@hicks-thomas.com
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**Attorneys in Charge for Plaintiff
Trinseo Europe GmbH**

## TABLE OF CONTENTS

I. ARGUMENT ........................................................................................................ 1

  A.   Standard of Review ........................................................................................ 1

  B.   The Court should reject the Harper Defendants' challenge to the jury's unjust enrichment award. ...................................................................................... 2

    1.   The Harper Defendants have waived their arguments challenging the unjust enrichment award. ....................................................................................... 3

    2.   Sufficient evidence supports the jury's award of unjust enrichment damages. ............. 4

    3.   Trinseo established causation, and apportionment is not necessary. ............................ 7

    4.   The Harper Defendants' attack under Rule 52 fails for the same reasons as their Rule 50 challenge. ...................................................................................... 11

  C.   Sufficient evidence supports the jury's alter ego finding against Stephen Harper. .......... 11

    1.   There was sufficient evidence that SHC and PCS were Harper's alter egos. ................ 12

    2.   The jury correctly found that the corporate forms of SHC and PCS were used to perpetuate a fraud, wrongful act, or defeat a rightful claim. ................................................. 17

    3.   Trinseo presented extensive evidence that disregarding the corporate form of SHC and PCS would achieve an equitable result. .................................................................. 18

II. CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aetna Casualty & Surety Co. v. Pendleton Detectives of Mississippi, Inc*.,
    182 F.3d 376 (5th Cir. 1999) ............................................................... 12

*Badillo v. Stanley Access Techs., LLC*,
    No. CV B-07-022, 2010 WL 11579506 (S.D. Tex. Aug. 20, 2010) (Hanen, J.) ...................... 7

*Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp*.,
    986 F.2d 1463 (5th Cir. 1993) ............................................................... 2

*Dill v. Rembrandt Grp., Inc.*,
    474 P.3d 176 (Colo. App. 2020) ............................................................ 12

*DSC Communications Corp. v. Next Level Comm'ns*,
    107 F.3d 322 (5th Cir. 1997) ............................................................... 10

*Flowers v. S. Reg'l Physician Servs*.,
    247 F.3d 229 (5th Cir. 2001) ................................................................ 1

*Gorsich v. Double B Trading Co.*,
    893 P.2d 1357 (Colo. App. 1994) .......................................................... 17

*Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*,
    37 P.3d 485 (Colo. App. 2001) ............................................................. 12

*Grenada Steel Indus., Inc. v. Alabama Oxygen Co., Inc*.,
    695 F.2d 883 (5th Cir. 1983) ............................................................... 10

*Harbor Compliance Corp. v. Firstbase.io, Inc*.,
    No. 5:23-CV-0802, 2024 WL 1442165 (E.D. Pa. Apr. 3, 2024) ................................ 4

*Harris v. FedEx Corp. Services, Inc.*,
    92 F.4th 286 (5th Cir. 2024) ....................................................... 1, 2, 3, 11

*Int'l Ins. Co. v. RSR Corp*.,
    426 F.3d 281 (5th Cir. 2005) ................................................................ 6

*Jones v. Kerrville State Hosp*.,
    142 F.3d 263 (5th Cir. 1998) ................................................................ 1

*LaFond v. Basham*,
    683 P.2d 367 (Colo. App. 1984) ............................................................ 18

*Liu v. SEC*,
   140 S. Ct. 1936 (2020) ..........................................................................................5

*Martin v. Freeman*,
   272 P.3d 1182 (Colo. App. 2012) .........................................................................17

*McCallum Family L.L.C. v. Winger*,
   221 P.3d 69 (Colo. App. 2009) .............................................................................16

*Newberry v. E. Tex. State Univ.*,
   161 F.3d 276 (5th Cir. 1998) .................................................................................4

*In re Phillips*,
   139 P.3d 639 (Colo. App. 1984) ...............................................................12, 13, 18

*Pineda v. UPS*,
   360 F.3d 483 (5th Cir. 2004) .................................................................................1

*Quintel Technology Ltd. v. Huawei Technologies USA, Inc.*,
   2018 WL 626355 (E.D. Tex. Jan. 30, 2018) ..........................................................8

*Reader v. Dertina & Assocs. Marketing, Inc.*,
   693.Pd 398, 399 (Colo. App. 1984) ...............................................................14, 17

*ResMan, LLC v. Karya Property Management, LLC*,
   2021 WL 3423345 (E.D. Tex. Aug. 5, 2021) .........................................................3

*Stockdale v. Ellsworth*,
   407 P.3d 571, 577 ...........................................................................14, 16, 17, 20

*Tisch v. Tisch*,
   439 P.3d 89 (Colo. App. 2019) .......................................................................14, 15

*University Computing Co. v. Lykes-Youngstown Corp.*,
   504 F.2d 518, 536 n.28 (5th Cir. 1974) ..............................................................3, 4

*Versata Software, Inc. v. Internet Brands, Inc.*,
   902 F. Supp. 2d 841 (E.D. Tex. 2012), *aff'd*, 550 Fed. Appx. 897 (Fed. Cir.
   2014) ...................................................................................................................7

*Walther v. Lone Star Gas Co.*,
   952 F.2d 119 (5th Cir. 1992) .................................................................................2

*Weeks v. Angelone*,
   528 U.S. 225 (2000).............................................................................................10

## Other Authorities

FED. R. CIV. P. 10(c) ....................................................................................................1

FED. R. CIV. P. 50 ................................................................................................1, 10, 11

FED. R. CIV. P. 50 and 52 ...................................................................................................1

FED. R. CIV. P. 50(b) ..................................................................................................3, 20

FED. R. CIV. P. 52 ............................................................................................................11

FED. R. CIV. P. 52(c) .......................................................................................................20

Federal Rules 50 and 52 ....................................................................................................1

RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 cmt. .............................................4

# I.
# ARGUMENT

Defendants Stephen Harper ("Harper"), Steve Harper Consulting, Inc. ("SHC"). and Polycarbonate Consulting Services, Inc. ("PCS") (collectively, the "Harper Defendants") bring their motion pursuant to Federal Rules 50 and 52 [Doc. 333] (the "Motion"). In their Motion, the Harper Defendants (a) join and re-urge the arguments KBR raised in its motion pursuant to Federal Rules 50 and 52 [Doc. 326] ("KBR's Motion"); and (b) challenge the jury's damages award against the Harper Defendants and the alter ego finding against Harper individually. As to the former, Trinseo incorporates its Response to KBR's Motion [Doc. 354] by reference, as permitted by FED. R. CIV. P. 10(c). As to the latter, Trinseo demonstrates below why the Court should deny the Harper Defendants' Motion in its entirety.

## A.      Standard of Review

A motion for judgment as a matter of law in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict. *Flowers v. S. Reg'l Physician Servs.*, 247 F.3d 229, 235 (5th Cir. 2001). Thus, a "jury verdict must be upheld unless 'there is no legally sufficient evidentiary basis for a reasonable jury to find' as the jury did." *Jones v. Kerrville State Hosp.*, 142 F.3d 263, 265 (5th Cir. 1998) (citing FED. R. CIV. P. 50(a)(1)) (emphasis added). The Court must "consider all the evidence in the record, drawing all reasonable inferences in the light most favorable to the verdict" without making credibility determinations or weighing the evidence as those are "jury functions, not those of a judge." *Harris v. FedEx Corp. Services, Inc.*, 92 F.4th 286, 297 (5th Cir. 2024) (cleaned up). "If reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *Pineda v. UPS*, 360 F.3d 483, 486 (5th Cir. 2004) (cleaned up). As for Rule 50 challenges to damages, there is "'a strong presumption in favor of affirming a jury award of damages.'" *Harris*, 92 F.4th at 298 (quoting

*Eiland v. Westinghouse Electric Corp.*, 58 F.3d 176, 183 (5th Cir. 1995)).  A "damage award may be overturned only upon a clear showing of excessiveness or upon a showing that the jury was influenced by passion or prejudice," and a "verdict is excessive if it is contrary to right reason or entirely disproportionate to the injury sustained."  *Id.*

**B.**     **The Court should reject the Harper Defendants' challenge to the jury's unjust enrichment award.**

The Harper Defendants argue "Trinseo's unjust enrichment damages model is not legally sufficient" based on their assertion that "Trinseo presented only a revenue number when the proper measure of damages for unjust enrichment is net profits," and that Trinseo failed to establish a causal link between its damages calculation and specific trade secrets.  [Doc. 333 at pp. 1, 5].  The Harper Defendants' argument fails for a variety of reasons.

First, the Harper Defendants have waived the argument, as discussed further below.

Second, the argument rests on the mischaracterization of the jury's verdict and the testimony of Trinseo's damages expert, Thomas Pastore ("Pastore"), and further ignores the supporting exhibits admitted during trial — exhibits that the Court must assume the jury relied upon in reaching its decision.  *See Walther v. Lone Star Gas Co*., 952 F.2d 119, 126 (5th Cir. 1992) (stating that "we must assume that the jury considered all of the evidence in reaching its decision").

Third, the argument is improperly based on criticisms of Pastore's methodology and conclusions, but as "a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."  *Concise Oil & Gas P'ship v. Louisiana Intrastate Gas Corp*., 986 F.2d 1463, 1476 (5th Cir. 1993) (internal quotation omitted).

Finally, the argument also disregards the well accepted premise that "it will be enough if the evidence show[s] the extent of the damages as a matter of just and reasonable inference,

although the result be only approximate." *ResMan, LLC v. Karya Property Management, LLC*, 2021 WL 3423345, at *5 (E.D. Tex. Aug. 5, 2021) (rejecting Rule 50(b) attack on damages for misappropriation of trade secrets) (quoting *DSC Communications Corp. v. Next Level Comm'ns*, 107 F.3d 322, 330 (5th Cir. 1997)).  Because the Harper Defendants have not shown and cannot show that "the facts and inferences point so strongly and overwhelmingly in [their] favor that reasonable jurors *could not* reach a contrary conclusion," the Court should deny the Motion. *Harris*, 92 F.4th at 297 (emphasis added).

      1.    <u>The Harper Defendants have waived their arguments challenging the unjust enrichment award.</u>

The Harper Defendants contend that it was "Trinseo's burden to establish the profit number by a preponderance of the evidence."  [Doc. 333 at p. 1].  Trinseo more than fulfilled its burden by providing the unchallenged evidence of the Harper Defendants' collected revenue and explaining why further deductions were not warranted.  [**Exhibit 1**, Cumulative Transcript from Jury Trial ("Cumulative"), at 2500:3-9, 2566:4 – 2569:2, 2569:24 – 2570:20, 2674:25 – 2675:8, 2683:18 – 2684:3, 2686:9-14, 2691:16 – 2692:1, 2694:15-19].[1]  If the Harper Defendants believed that additional deductions were warranted, or that their claimed profits resulted from sources other than the misappropriation of Trinseo's trade secrets, then they had the obligation to prove the existence and amount of expenses that would qualify as valid deductions or to show that other factors "caused" the profits.  As the Fifth Circuit noted in *University Computing Co. v. Lykes-Youngstown Corp.*, "once the plaintiff . . . prove[s] profits were made," **the defendant** bears the

---

[1]   Because the current ECF filings do not contain the entire transcript from the trial, Trinseo gathered the transcripts from the pretrial conference and the entire trial, and placed them in a single PDF file, bookmarked and consecutively paginated for ease of review and brevity in citation.  Therefore, citations to the transcript pages are to the page of the cumulative transcript, as opposed to separate mornings or afternoon of the trial.  In addition, this response cites to various trial exhibits the Court admitted at trial but has not included each of them as exhibits to this Response.  Should the Court wish to have those exhibits in hand to decide the post-trial motions, Trinseo will deliver the original set of trial exhibits to the Court upon request.

"burden of proving factors other than the [trade secret] caused the profits."  504 F.2d 518, 536 n.28 (5th Cir. 1974) (citing *Westinghouse Electric & Manufacturing Co. v. Wagner Electric & Manufacturing Co*., 225 U.S. 604 (1913)); *cf.* RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 45 cmt. f ("[T]he defendant has the burden of establishing any portion of the sales not attributable to the trade secret."); *see also Harbor Compliance Corp. v. Firstbase.io, Inc*., No. 5:23-CV-0802, 2024 WL 1442165, at *8 (E.D. Pa. Apr. 3, 2024) (holding, in DTSA and trademark infringement case, that burden of apportionment in disgorgement of profits analysis shifts to defendant once plaintiff offers initial profit calculation).

While the Harper Defendants now offer information on various "buckets" of expenses that the Harper Defendants contend Trinseo (or perhaps the jury) should have deducted, they offered little to no *evidence* of those expenses at trial; more importantly, they failed to secure a jury finding on what expenses should have been deducted.  They also failed to object to the omission of that question from the jury charge.  Given the language of *University Computing* cited above, the Harper Defendants have waived any argument challenging the unjust enrichment award based on Trinseo's alleged failure to deduct expenses or prove which stolen trade secrets led to the payments the Harper Defendants admittedly received from Prime 3 or KBR.  *See  Newberry v. E. Tex. State Univ*., 161 F.3d 276, 281 (5th Cir. 1998) (failure to object to the omission of a claim from the jury instructions results in waiver).  The Court should therefore conclude that the Harper Defendants have waived this point.

2.    Sufficient evidence supports the jury's award of unjust enrichment damages.

Regardless of whether the Harper Defendants waived the issue, sufficient evidence supports the jury's unjust enrichment award.  The Harper Defendants claim that Trinseo presented evidence only of revenue as the basis for its unjust enrichment damage model against PCS and SHC.  [Doc. 333 at p. 2].  This is not correct.  Pastore testified that he ███████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████ [Cumulative

2566:9–21; *see also* PX233].  Based on those sources, Pastore concluded that ███████████

█████████████████████████████████████████████ [Cumulative

2566:18–2567:2].   Likewise for PCS, Pastore considered ██████████████████████

█████████████████████ [Cumulative 2567:3–18; *see* PX280, PX300].  Based on those

invoices, Pastore concluded that █████████████████████████████████████

█████████████████████████████████ [Cumulative  Transcript  at

2567:19–22].

While Pastore's opinion certainly **started** with the revenues reported by SHC and PCS,

Pastore  also  determined  that  ████████████████████████████████████

[Cumulative 2674:25 – 2675:6].  Specifically, in *Liu v. SEC*, 140 S. Ct. 1936 (2020), the Supreme

Court held that "courts must deduct **legitimate** expenses before ordering disgorgement."  *Id.* at

1950 (emphasis added).  *Liu* makes clear that not every expense is legitimate, as some proffered

expenses "are merely wrongful gains under another name." *Id*.  *Liu* therefore confirms that "a

defendant may be denied inequitable deductions," which include those expenses which "fuel[] a

fraudulent scheme." *Id*.  Pastore  concluded  that  ████████████████████████

█████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████ Indeed, the only business activities that SHC and PCS ever conducted were

the consulting activities for Prime 3 and for KBR on the Cangzhou and Ping Mei projects, which

were the impetus for the theft of trade secrets.  [Cumulative 2691:16 – 2692:1, 2694:15-19].  As

such, any expenses that PCS and SHC incurred while performing the very acts the jury found to

constitute misappropriation would entitle a jury to reasonably conclude that these expenses "fuel[ed]" the scheme of misappropriation, and that reasonable inference is sufficient evidence to support the verdict. *See Int'l Ins. Co. v. RSR Corp.*, 426 F.3d 281, 297 (5th Cir. 2005) (holding that a "jury may draw reasonable inferences from the evidence, and those inferences may constitute sufficient proof to support a verdict," and a court may not "substitute for the jury's reasonable factual inferences other inferences that we may regard as more reasonable") (internal citations omitted). Accordingly, sufficient evidence supports the jury's figures for unjust enrichment.

Moreover, Harper's counsel cross-examined Pastore on the issue of whether certain expenses were properly excluded from his calculations, relying heavily on Plaintiff's Exhibits 280 and 300. [*See* Cumulative 2675:23–2687:9]. Those expenses include ██████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ [Cumulative 2683:15–17, 2684:4–11]. Harper's invoices to KBR provide ample detail to allow a reasonable jury to determine which expenses, if any, were legitimate expenses. Within those roughly sixty pages of invoices, Harper and other Tech Team members provided itemized expenses for their work — the very work that the jury ultimately found constituted misappropriation of Trinseo's trade secrets. [*See infra* at I.B.].

Consequently, the Harper Defendants' contention that "the jury's award . . . simply adopted Trinseo's revenue figures" is not accurate. While Pastore's opinion considered and rejected as illegitimate the expenses associated with SHC's and PCS's "consulting" work, the jury did not adopt his opinion wholesale. Based on the evidence presented at trial, the jury awarded a number different from what Pastore opined, namely, $2,930,817.00 against SHC and $2,549,706.00 against PCS — ████████████████ less than the figures presented by Pastore. [Doc. 321 at p.

27].  Given the testimony of Trinseo's expert and the documentary evidence presented (including

bank records and invoices), a rational jury could easily (and, in this case, did) conclude that most,

if not all, of the "expenses" PCS and SHC incurred in performing services for KBR and Prime 3

respectively "fuel[ed]" the scheme of misappropriation and, therefore, fall within the category of

non-legitimate, wrongful, and inequitable deductions.

Thus, there is sufficient evidence in the record supporting the jury's award of unjust

enrichment damages in the amount of $5,480,523.00.  *See Badillo v. Stanley Access Techs., LLC*,

No. CV B-07-022, 2010 WL 11579506, at *7 (S.D. Tex. Aug. 20, 2010) (Hanen, J.) (denying

request for new trial because (a) expert's testimony was not the only evidence admitted on the

disputed issue and (b) expert "was vigorously cross-examined" at trial and "[v]igorous cross-

examination, presentation of contrary evidence, and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence.").

       3.      <u>Trinseo established causation, and apportionment is not necessary.</u>

The Harper Defendants next argue (erroneously) that "[w]hether considered a failure of

causation, or a failure to apportion, the failure to tie the damages number presented to the jury to

the liability of the full ten trade secrets presented, let alone the partial liability found by the jury,

is fatal."  [Doc. 333 at p. 7].  This argument — assuming it has even been preserved — is

unsupported by sufficient legal authority, and it disregards the evidence and testimony *actually*

presented at trial.

First, the Harper Defendants — like the KBR Defendants — offer no binding authority that

requires a DTSA plaintiff to allocate unjust enrichment by trade secret or tie specific profits to

specific trade secrets.  Because the argument from the Harper Defendants largely mirrors that of

their co-defendant KBR as to apportionment, Trinseo incorporates by reference herein pages 3–13

and 26–33 of its Response to KBR's Motion.  [Doc. 354].  *See also Versata Software, Inc. v.*

*Internet Brands, Inc.*, 902 F. Supp. 2d 841, 856–57 (E.D. Tex. 2012) (The "jury was entitled to conclude that the trade secrets were the basis for the core features of the products offered to Toyota and that Versata's profits on the Toyota contracts were therefore entirely attributable to the trade secrets."), *aff'd*, 550 Fed. Appx. 897 (Fed. Cir. 2014); *Quintel Technology Ltd. v. Huawei Technologies USA, Inc*., 2018 WL 626355, at \*7 (E.D. Tex. Jan. 30, 2018) ("Whether the full amount of the infringer's profits is attributable to the alleged misappropriation of trade secrets is for the jury to decide when awarding damages.").

Second, the exact number of stolen trade secrets the jury used to calculate its unjust enrichment figure is irrelevant, since the evidence adduced at trial would entitle the jury to reasonably conclude that even one misappropriated trade secret led to the full amount of the unjust enrichment damages it found.  The evidence at trial showed that both Luxi (via Prime 3) and KBR

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████.[2]  The jury was

---

[2] ██████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████

entitled to conclude from this evidence that the misappropriation of even one trade secret "caused" the payment of the millions of dollars that the jury calculated as unjust enrichment. If the Harper Defendants wanted to argue alternative causation, it was their burden to prove it by, at a minimum, offering evidence of it and obtaining a jury finding on the factual issue. [*See* pages 6–7 *supra*].

Beyond that, the invoices that the Harper Defendants submitted to KBR provide descriptions of the invoiced items sufficient for the jury to link the expenses with the misappropriated trade secrets. In fact, the invoices contained in Plaintiff's Exhibit 280, a sixty-page exhibit of PCS's invoices to KBR, show sufficient detail for the jury to determine which expenses are related to the misappropriated trade secrets. The invoices also reflect the consulting fees for other Tech Team members, some of whom contributed consulting services for matters that the jury ultimately found not to be trade secrets (such as those on which Defendant Bill Davis worked):



[PX280 at p. 38].  As is apparent from this exhibit, there is sufficient evidence in the record for a reasonable jury to link the Harper Defendants' invoiced expenses to the misappropriated trade secrets.

In conclusion, the Court properly instructed the jury to "consider only profits caused by trade secrets misappropriated by that Defendant."  [Doc. 321 at p. 26].  Because a jury must be presumed to have followed its instructions, *see Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and because a jury has discretion to depart from the numbers provided by the parties' experts, it must be presumed that the jury "apportioned" unjust enrichment damages as required by the above-quoted instruction, especially since the jury did not simply adopt Pastore's opinions.  *DSC Communications Corp*., 107 F.3d at 330 (rejecting Rule 50 challenge to lost profits damage model that was not apportioned by specific causes of action; "even if the jury's finding [of no liability as to one cause of action] was relevant to the misappropriation of trade secrets damages, we may safely assume the jury did not award damages to [the plaintiff] for conduct for which [two individual defendants] were not liable"); *Grenada Steel Indus., Inc. v. Alabama Oxygen Co., Inc*., 695 F.2d 883, 889 (5th Cir. 1983) ("It was for the jury to decide which of the experts was more credible, which used the more reliable data, and whose opinion — if any — the jury would accept. The jury might credit one or more of the expert opinions or it might reject them all.").  Indeed,

Trinseo asked for ██████████████████, [Cumulative Transcript at 2567:23–24], yet the jury awarded ██████████ [Doc. 321 at p. 27].  The jury did not "necessarily include 100% of the revenue made by SHC and PCS," as the Harper Defendants claim.  [Doc. 333 at p. 6].  Given that the jury awarded less than the amount requested by Trinseo, it can be presumed the jury not only followed the Court's instruction to award damages only for the trade secrets misappropriated by the Harper Defendants, but also that the jury had sufficient evidence to do so.

4.     The Harper Defendants' attack under Rule 52 fails for the same reasons as their Rule 50 challenge.

For the reasons stated in Trinseo's trial brief on this issue [Doc. 228 at pp. 2–7], damages for unjust enrichment under the DTSA should be assessed by the jury.  But if the Court chooses to treat the jury's answer to Question Nos. 3(d) and 3(e) as advisory, Trinseo respectfully urges the Court to take the jury's advice and award Trinseo $5,480,523 in unjust enrichment damages against SHC and PCS.  As shown above, there is legally sufficient evidence of compensatory damages measured by unjust enrichment.   The Court should therefore disregard the Harper Defendants' attack on the jury's assessment of such damages.

## C.     Sufficient evidence supports the jury's alter ego finding against Stephen Harper.

While the Harper Defendants acknowledge *some* of the voluminous evidence that Trinseo presented to demonstrate that SHC and PCS were Harper's "alter egos," they contend (without support) that this evidence is insufficient.  [Doc. 333 at p. 11].  What the Harper Defendants do not acknowledge, however, is that the Court *must* deny a Rule 50 Motion "unless the facts and inferences point *so strongly and overwhelmingly in the movant's favor* that reasonable jurors *could not* reach a contrary conclusion."  *Harris*, 92 F.4th at 297 (emphasis added).  As shown below, the Harper Defendants have not met their burden.

The Court properly instructed the jury that "Harper is responsible for the conduct of SHC and/or PCS if: (1) SHC and/or PCS were merely the alter egos of Harper; (2) [t]he corporate form of SHC and/or PCS was used to perpetuate a fraud, wrongful act, or defeat a rightful claim; and (3) [d]isregarding the corporate form of SHC and PCS would achieve an equitable result."  [Doc. 321 at p. 36 of the Charge (p. 23 of the filed verdict)]; *see also In re Phillips*, 139 P.3d 639, 644 (Colo. App. 1984).  As to the first element, the jury was further instructed to analyze the evidence in light of numerous factors that courts typically use to determine whether a corporation is the alter ego of a shareholder, including whether (1) the corporation is operated as a distinct business entity; (2) funds and assets are commingled; (3) adequate corporate records are maintained; (4) the nature and form of the corporation's ownership and control facilitate misuse by an insider; (5) the business is thinly capitalized; (6) the corporation is used as a mere shell; (7) the shareholder disregards legal formalities; and (8) the corporate funds or assets are used for noncorporate purposes.  [Doc. 321 at p. 36 of the Charge (p. 23 of the verdict)].

1.      <u>There was sufficient evidence that SHC and PCS were Harper's alter egos.</u>

Although Colorado courts are clear that not all eight factors must exist to find alter ego, the Harper Defendants mistakenly treat these guiding "factors" as separate, independently required elements.  *See Great Neck Plaza, L.P. v. Le Peep Restaurants, LLC*, 37 P.3d 485, 490 (Colo. App. 2001) ("[T]he court may consider certain factors, not all of which must be shown."); *see also Dill v. Rembrandt Grp., Inc.*, 474 P.3d 176, 184 (Colo. App. 2020) ("Courts examine the specific facts of the case and need not find the existence of every factor to find an alter ego.").  Moreover, while the Harper Defendants focus on Harper's own trial testimony in arguing there was insufficient evidence to find that SHC and PCS were Harper's mere "alter egos," the Court is required to consider *all* the evidence in the record in the light most favorable to Trinseo while disregarding all evidence favorable to the Harper Defendants that the jury is not required to believe.  *Aetna*

*Casualty & Surety Co. v. Pendleton Detectives of Mississippi, Inc*., 182 F.3d 376, 378 (5th Cir. 1999) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1300 (5th Cir. 1994)).  When viewed in the appropriate light, the evidence Trinseo presented — both during its examination of witnesses and through its trial exhibits — was more than sufficient to support the jury's verdict that SHC and PCS were Harper's "alter egos."

 Trinseo presented multiple instances in which Harper failed to treat SHC and PCS as entities distinct from himself.  For example, ██████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ [PX159].  Moreover, the jury heard evidence, described in more detail below, that ████████████████████████████████████ ██████████████████████████████████████████████████████████████.  Based on this evidence, and on the Court's instruction that "a corporation like SHC or PCS is the alter ego of a shareholder like Stephen Harper when . . . there is such *unity of interest* in the ownership that the *separate personalities of the corporation and the shareholder no longer exist*," it may be presumed that the jury found that Harper failed to treat SHC and PCS as distinct entities from himself.  [Doc. 321 at 26; *see In re Phillips*, 139 P.3d at 646 ("Also significant is [a company's] failure to operate as a distinct business entity, including . . . the intermingling with . . . [the shareholder's] personal affairs.")].

 Additionally, Trinseo presented the jury with numerous examples of ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████:

██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████



[*See also* PX300, PX280].

While the Harper Defendants contend that these expenses are insufficient because they constitute only a portion of the overall corporate expenses, the Harper Defendants simultaneously ignore the fact that there is no "percentage of overall expenses" requirement under Colorado law. Rather, Colorado courts have repeatedly affirmed decisions piercing the corporate veil *without* discussing the relative amount of the personal expenses on corporate accounts, indicating that the mere fact funds were commingled or used for personal expenses is sufficient. *See Stockdale v. Ellsworth*, 407 P.3d 571, 577 (Colo. 2017) (citation omitted) (relying on the fact that "[the shareholder's] payments [on behalf of the corporation] were made from [the shareholder's] personal checking account or were cash" without addressing the relative amount of these payments); *see Reader v. Dertina & Assocs. Marketing, Inc.*, 693.Pd 398, 399 (Colo. App. 1984) (affirming veil piercing where the shareholder "took money from the corporate account for personal purchases" without analyzing the relative amount taken); *see Tisch v. Tisch*, 439 P.3d 89, 99 (Colo. App. 2019) (affirming veil piercing where "corporate funds and assets were used for noncorporate purposes, such as inventory for a different company, a trip to Belize, and dinners" without assessing the amount of these personal expenses relative to the company's overall expenses).

In any event, the exhibits contained numerous other examples of such commingling and misuse of corporate funds for personal expenses, which Trinseo could have explored further with

Harper given unlimited trial time, which the parties simply did not have.  And certainly, Harper could have disavowed Trinseo's claims by offering unredacted versions of his bank statements, but he did not.  Those bank statements reflect ███████████████████████████████

████████████████████████████████████████████████████████████████████████████

██████████████████████ [*See, e.g.,* PX300 at pp, 1, 5, 9, 17, 20, 25, 29, 33, 36, 39, 42, 44, 48, 53, 56, 62, 70, 72, 77, 80, 84, 86, 88, 92, 94, 98, 102, 104, 112 ██████████████████████████

████████████████████████████████████████████████ PX300 at pp. 5, 9, 13, 17, 21, 25, 29, 33, 36, 40, 43, 45, 49, 53, 57, 63, 67, 70, 73, 77, 81, 84, 86, 88, 90, 92, 94, 99, 102, 104, 106, 108, 110, 113 █████████████████████████

If it was true, as Harper claimed, that ████████████████████████ [Cumulative p. 1760:2-7],[3] then not one single entry should have been redacted.  The jury was entitled to infer from Harper's decimated credibility and blatant obfuscation that unexplained or redacted descriptions revealed personal use of funds.

Moreover, the manner in which PCS and SHC were formed and controlled facilitated Harper's misuse of the entities.  In particular, Harper ██████████████████████████████

████████████████ During trial, the jury heard ██████████████████████████████

██████████████ [Cumulative 1789:12–14]; ██████████████████████████████████

████████ [Cumulative 1789:8–14]; (3) █████████████████████████████████████

[Cumulative 1759:23–1760:1]; and (4) ██████████████████████████████████

████████████████████████████████████████████████████████ [Cumulative 4149:25–4150:1; *see* Doc. 303 at p. 10].  While not dispositive of alter ego, an individual's sole control and operation of an entity is an important factor under Colorado law.  *See Tisch*, 439 P.3d

---

[3] Trinseo later proved ████████████████████ [Cumulative 1789:15 – 1792:4]

at 99 (affirming veil piercing, in part, because the shareholder's "individual position as the controlling and sole voting shareholder facilitated his misuse of [the corporation's] funds (as evidenced by [the corporation] paying his personal expenses, personal loans, and the expenses of his other companies)"); *Ellsworth*, 407 P.3d at 578 (affirming veil piercing, in part, because the shareholder "testified that he had been the sole manager of [the company] since its inception in 2007 and that he makes all the decisions for [the company]"); *McCallum Family L.L.C. v. Winger*, 221 P.3d 69, 75 (Colo. App. 2009) (noting that where "the party sought to be held liable exercises an extensive level of control over the corporation, such control may be an *important* factor in determining whether to pierce the veil" (emphasis added)).

Trinseo also presented evidence that ████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████. [Cumulative 1761:22–1764:1].  While Harper attempted to assert what he thought were plausibly innocent reasons ██████████████████████████████████████████████ ████████████████████████████████████ [Cumulative at 1761:22 – 1762:12]), Trinseo impeached his claim with Harper's own email admitting that ██████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ [PX209, at p. 1; *see* Cumulative 1762:17–1764:1; *see also* PX288 at p. 1; Cumulative 1814:4–1815:11 (Harper admitting he ██████████████████████████████████████████ ████████████████████████████████████████████████████

The jury was entitled to find alter ego status from this evidence because it tends to show that Harper created PCS for the sole purpose of hiding his identity before entering into a Consulting Agreement with KBR.  *See McCallum Family*, 221 P.3d at 77 ("A reasonable fact finder could

conclude that [the individual defendant's] father signed the lease under a pseudonym for improper reasons, such as to give an appearance that [the individual defendant] was not the alter ego of the corporation and to assist him in evading personal liability for the lease obligation.").

     2.    <u>The jury correctly found that the corporate forms of SHC and PCS were used to perpetuate a fraud, wrongful act, or defeat a rightful claim.</u>

In their Motion, the Harper Defendants boldly assert that "Trinseo presented no evidence that the corporate form was used to perpetuate a fraud or defeat a rightful claim." [Doc. 333 at 13]. However, the Harper Defendants misstate the law in this regard. Under Colorado law (as outlined in the Court's instructions), this second veil-piercing element may be met not only upon a showing of evidence that the corporate form was used to "perpetuate a fraud" or "defeat a rightful claim," but, alternatively, upon a showing of evidence that the corporate form was used to perpetuate a "wrongful act." [*See* Doc. 321 at p. 36]; *see also Gorsich v. Double B Trading Co.*, 893 P.2d 1357, 1362 (Colo. App. 1994) (this element may be met by a showing that a shareholder used the corporate entity "in order to perpetrate a fraud *or* wrong on another") (emphasis added). Moreover, while the Harper Defendants imply that this element requires evidence of some sort of "fraudulent transfer" type of conduct, the Harper Defendants again misstate the law; this element does not require Trinseo to show Harper had "wrongful intent." *See Martin v. Freeman*, 272 P.3d 1182, 1186 (Colo. App. 2012) ("Defendants have not cited any Colorado case, and we are aware of none, establishing that a party seeking to pierce the corporate veil must show wrongful intent."); *Ellsworth*, 407 P.3d at 575-80 (affirming a decision to pierce the corporate veil where there was no "fraudulent transfer" type of conduct); *Reader*, 693 P.2d at 399 (same).

Here, the evidence sufficiently establishes that Harper used SHC and PCS to perpetuate a wrong (i.e., the misappropriation of Trinseo's trade secrets). During trial, the jury heard copious testimony that ████████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████. From this

evidence, a jury could reasonably infer that Harper wrongfully misappropriated Trinseo's trade

secrets through or by means of SHC and PCS.

While the Harper Defendants stress that Trinseo failed to meet the requirement under this

element that "the corporate form was used to shield a dominant shareholder's improprieties," the

evidence presented to the jury showed just that. [*See* Doc. 333 at pp. 13–14]. First, Harper

admitted that, ██████████████████████████████████

██████████████████████████████████████████

██████████████████ [Cumulative 1814:1–1815:11]. Second, Harper told the jury ███████

██████████████████████████████████████████

██████████████████████ [Cumulative 1823:18–20]. The jury had full

discretion to weigh the evidence presented and determine that these steps were taken to

"perpetuate" the wrongful act of misappropriating Trinseo's trade secrets.

3.     Trinseo presented extensive evidence that disregarding the corporate form of SHC and PCS would achieve an equitable result.

"Achieving an equitable result is the paramount goal of traditional piercing of the corporate

veil." *In re Phillips*, 139 P.3d at 369. To hold, contrary to the jury's findings, that the evidence

was insufficient to find that SHC and PCS were Harper's "alter egos" would surely diminish the

purpose of veil-piercing law and effectively absolve Harper of his misappropriation of Trinseo's

trade secrets. *See LaFond v. Basham*, 683 P.2d 367, 369 (Colo. App. 1984) ("If adherence to the

corporate fiction would promote injustice, protect fraud, defeat a legitimate claim, or defend crime,

the invocation of equitable principles for the imposition of personal liability may occur."). This is

especially true where the jury heard evidence that Harper ███████████████████

███████████████████████████████████. [*See* Cumulative 1838:1–7, 1838:13-18; PX178,

at 1; PX427].

By finding that Harper, SHC, and PCS misappropriated Trinseo's trade secrets and that

SHC and PCS were Harper's "alter egos," the jury demonstrated that it simply did not buy the

Harper Defendants' argument that ████████████████████████████████████

████████████████████ [*See* Cumulative 4265:15–4266:11].  The evidence presented at trial

showed that misappropriating trade secrets — of which the jury found Harper, SHC, and PCS

guilty — is wrongful.  [*See* Cumulative 2998:2–9 ███████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████; *see* Cumulative 3239:13–15 ██████████

██████████████████████████████████████████████████████████

███  *see* PX306, at 1 (e-mail from Harper to Prime 3 stating, ██████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████.  In fact, in his testimony presented at trial, Lester "Chip" Melton

testified that he ██████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████  [*See* Cumulative 2999:9–21].  The jury was free to believe this testimony.

In what appeared to be a ploy to garner sympathy for Harper, the Harper Defendants

stressed ████████████████████████████████████████████████████████████

[Cumulative 1897:7–1898:22].  In so doing, Harper showed the jury that without holding Harper

personally liable, Trinseo would not be able to recover from SHC and PCS.  Surely, such a result

would not be deemed by a reasonable jury as "equitable"; in fact, in *Ellsworth*, the Supreme Court of Colorado affirmed a decision to pierce the corporate veil of a corporation where the corporation "was apparently insolvent and had no assets, such that limiting liability to [the corporation] would foreclose any meaningful opportunity for injured parties to recover for conduct for which [the shareholder] was responsible."  407 P.3d at 575, 580.  The same would be true if the Court were to hold that Trinseo could not recover from Harper individually.

Lastly, while the Harper Defendants argue that it would be "inequitable" to pierce the corporate veil and hold Harper liable for revenue allegedly received by other Tech Team members, this argument is flawed.  The jury (1) was instructed to award compensatory damages *only* against those defendants, if any, it found to have misappropriated Trinseo's trade secrets; and (2) was given SHC's and PCS's bank statements from which it could determine the amounts paid to the other members of the Tech Team.  [*See* PX300, PX280].  If there were any other invoices or statements that the Harper Defendants wanted the jury to consider in determining their damages calculations outside those presented to the jury, it was their burden to present them during trial.

## II.
## CONCLUSION

The Court should deny the Harper Defendants' Motion for Judgment as a Matter of Law Under Rule 50(b) and Motion for Judgment on Partial Findings of Law under Rule 52(c).

DATED:  April 26, 2024                    Respectfully submitted,

**HICKS THOMAS LLP**

A REGISTERED LIMITED LIABILITY PARTNERSHIP

By:  _____

**Stewart Hoffer**
Texas Bar No. 00790891
SDTX No. 20123
shoffer@hicks-thomas.com
**Eric Grant**
Texas Bar No. 12489510
SDTX No. 12676
grant@hicks-thomas.com
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

**Attorneys in Charge for Plaintiff
Trinseo Europe GmbH**

**Certificate of Service**

I hereby certify that on April 26, 2024, a true and correct copy of this document was served on the parties listed below electronically via the Court's CM/ECF noticing system and/or via email pursuant to the agreement of the parties.

Benjamin Foster
ben@fosteryarborough.com
Alisa Lipski
alisa@fosteryarborough.com
FOSTER YARBOROUGH, LLP
917 Franklin Street, Suite 220
Houston, Texas 77002

Geoffrey L. Harrison
gharrison@susmangodfrey.com
Matthew Behncke
mbehncke@susmangodfrey.com
Katherine Drews
kdrews@susmangodfrey.com
Abigail Noebels
anoebels@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Ste. 5100
Houston, Texas 77002

Matt Allen
Allen & Nunnally LLP
matt.allen@allen-nunnally.com
3701 Kirby Drive, Suite 1212
Houston, Texas 77098

_____
**Stewart Hoffer**